# United States Court of Appeals
## For the First Circuit

No. 16-2027

KAMAL ALI, ISRAA HASSAN,

Plaintiffs, Appellants,

v.

UNITED STATES OF AMERICA; JEFFERSON B. SESSIONS, III, Attorney
General of the United States; JOHN F. KELLY, Secretary of the
U.S. Department of Homeland Security; LORI SCIALABBA, Acting
Director of U.S. Citizenship and Immigration Services; ANDREA
ROGERS, Field Office Director of the U.S. Citizenship and
Immigration Services Manchester Field Office,*

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Andrea K. Johnstone, U.S. Magistrate Judge]

Before

Lynch, Thompson, and Barron,
Circuit Judges.

---

\* Pursuant to Fed. R. App. P. 43(c)(2), the following
substitutions have been made among the appellees: Jefferson B.
Sessions, III, Attorney General of the United States, for former
Attorney General Loretta E. Lynch; John F. Kelly, Secretary of the
U.S. Department of Homeland Security, for former Secretary Jeh
Charles Johnson; Lori Scialabba, Acting Director of U.S.
Citizenship and Immigration Services, for former Director Leon
Rodriguez; and Andrea Rogers, Field Office Director of the U.S.
Citizenship and Immigration Services Manchester Field Office, for
former Director Anthony Violanti.

Nathan P. Warecki, with whom Nixon Peabody LLP, Anna Barbara Hantz, and Sheehan Phinney Bass & Green, PA were on brief, for appellants.

Terry L. Ollila, Assistant United States Attorney, with whom Emily Gray Rice, United States Attorney, was on brief, for appellees.

---

February 28, 2017

---

**LYNCH**, **Circuit Judge**. Israa Hassan, a U.S. citizen, filed an I-130 petition seeking permanent resident status for her noncitizen husband, Kamal Ali. See 8 U.S.C. §§ 1151(b)(2)(A)(i), 1154(a)(1)(A)(i); 8 C.F.R. § 204.2(a). After interviewing Ali and Hassan, U.S. Citizenship and Immigration Services ("USCIS") issued a Notice of Intent to Deny ("NOID") the petition because of the agency's determination that Ali's prior marriage to Priscilla Lewis was "entered into for the purpose of evading the immigration laws." 8 U.S.C. § 1154(c). Ali and Hassan submitted additional evidence in response to the NOID, including affidavits from Ali and Lewis, aiming to prove that Ali's first marriage had not been fraudulent. Not persuaded to change its decision, USCIS denied the petition.

On appeal from an adverse judgment against them in their lawsuit challenging that denial, Ali and Hassan argue that USCIS did not afford them sufficient procedural due process, required by the Constitution, in denying the I-130 petition. Even if we assume arguendo that the plaintiffs are entitled to some form of constitutional due process from an interest in Ali having permanent resident status through the petition, the district court properly held that the plaintiffs have not shown how the additional process they seek would have made any difference to the outcome. See Ali v. United States, No. 15-cv-201-AJ, 2016 WL 3190190, at *7, *8

- 3 -

(D.N.H. June 7, 2016).  We affirm the district court's grant of summary judgment in the government's favor.

I.

Ali, a native of Sudan, entered the United States in 1988 on a student visa to attend Long Island University ("LIU"). He never enrolled and was living in Boston by 1989.  In Boston he met Priscilla Lewis, a U.S. citizen, and they married in 1993.

On November 2, 1995, Ali applied for adjustment of status under the Diversity Immigrant Visa program.  See 8 U.S.C. § 1153(c).  When the Immigration and Naturalization Service ("INS")[1] requested an original copy of the photocopied and translated high school diploma he had submitted, Ali provided an ostensible original that was inconsistent with the photocopy.  The INS concluded that the purported original diploma "c[ould] not be the original of the photocopy."  When the INS again requested a true original, Ali's counsel responded that both versions of the document contained the same information and that "there [wa]s no original to the photocopy that was originally submitted."  The INS concluded that Ali had failed to submit a valid original diploma. See 8 C.F.R. § 103.2(b)(5).  On November 19, 1996, the INS denied Ali's petition to adjust status, citing the false documentation.

---

[1]    In 2003, USCIS and other components of the Department of Homeland Security assumed the functions of the now-defunct INS. See Ali, 2016 WL 3190190, at *1 n.2.

- 4 -

After Ali's first failed effort to adjust his status, Lewis filed an I-130 petition in October 1997 on Ali's behalf. The petition, signed by Lewis and Ali, stated that the couple had lived together in Manchester, New Hampshire since August 1997. Before the couple's scheduled interview with the INS in January 1998, however, Ali contacted INS officials and asked to reschedule, stating that he and Lewis had separated and wanted time to work toward a reconciliation. The interview was postponed two more times after that. At a scheduled meeting in June 1998, Ali appeared with a woman who claimed to be Lewis, but she had brought no valid photo identification despite prior instructions to do so.

An INS investigation into Ali's and Lewis' marriage found additional information that cast doubt on the marriage's bona fides. For example, the investigators obtained Massachusetts welfare records that showed that Lewis had been receiving welfare checks at the same Boston address since 1985. Other records stated that Ali had lived at several different addresses in Massachusetts and New Hampshire between 1993 and 1998. No records linked Lewis to any address in New Hampshire.

In September 1999, two INS agents interviewed Lewis in Boston, finding her at the street address to which Massachusetts had been sending her welfare checks. During the interview, as described by a report signed by one of the INS agents, Lewis stated that Ali had offered her $1000 to marry him so that he could obtain

- 5 -

a green card -- that is, permanent resident status. She added that after she and Ali separated, in 1998, Ali had asked her to give the immigration authorities the false impression that the two of them were still living together.

After the interview, Lewis withdrew the I-130 petition that she had filed on Ali's behalf. Her explanation of the withdrawal, which was handwritten and signed by her, reiterated that Ali had asked her to lie about their relationship and had offered her $1000 to marry him. The plaintiffs have not disputed that Lewis signed the statement, and the INS agent verified that Lewis had signed. The statement is handwritten, in the first person, and appears to be in the same handwriting as her signature on the statement and on the I-130 petition.

When an INS agent contacted the LIU registrar, he recovered information that Ali had never attended the school. On November 17, 1999, an INS agent spoke to Ali, and Ali admitted he had never attended.

Ali and Lewis divorced in May 2002. Ali and Hassan, the plaintiffs in this case, married in April 2003. Hassan filed an I-130 petition on Ali's behalf in July 2007, the year after she became a naturalized U.S. citizen. A USCIS officer in the Manchester Field Office interviewed Ali and Hassan in January 2008. During that interview, Ali later alleged, he was told about Lewis' 1999 statement. At the interview, while under oath, he denied

paying Lewis to marry him. In the final decision that USCIS ultimately issued, USCIS said that Ali also confirmed in the interview that he and Lewis had "primarily" lived apart "during the duration of their marriage" and, USCIS said, he stated that they "were not, in fact, living together in 1998 when the two were asked to appear for an [INS] interview."

On August 25, 2008, the Manchester Field Office Director ("the Director") sent Hassan a NOID. The NOID explained that USCIS had reviewed the record and concluded that Ali's marriage to Lewis had been fraudulent. The NOID relied most heavily on Lewis' statements, in her 1999 interview with INS agents, that she had not been living with Ali "at the time of the June 1998 interview" and that Ali had offered to pay her "$1000 to marry him so he c[ould] get a green card." The NOID then stated that "the evidence present in the file, mainly in the form of Ms. Lewis' sworn testimony, weigh[ed] heavily in the decision of [Hassan's] visa petition for Mr. Ali" and that "[t]he file lack[ed] essential evidence that clearly indicate[d] Mr. Ali and Ms. Lewis lived together as husband and wife." The NOID stated that "[f]urthermore" Ali's statements at the January 2008 interview supported its conclusions. The NOID offered Hassan and Ali a chance to respond and "to establish why [Hassan's I-130 petition] should not be denied."

On October 25, 2008, Hassan and Ali submitted additional evidence to USCIS in response to the NOID. The response included an affidavit from Lewis, Ali's former wife, in which she contradicted her September 1999 interview and signed statement by asserting that she had married "out of love and not for money," that Ali had "never offered [her] any money to marry him," and that she had "never told anyone [from INS] that . . . Ali offered [her] money for a green card." But Lewis did not deny that she had met with an INS agent in 1999. Nor did she deny that she had executed and then signed the 1999 interview statement or that the agent had witnessed and confirmed her signature. Lewis' new affidavit also stated that she had "destroyed a lot of the proof of [their] life together, such as photos, because [she had been] angry at [their] separation."

In response to the NOID, Hassan and Ali, represented by counsel, also submitted, in addition to Lewis' recantation, an affidavit from Lewis' mother stating that Lewis had moved to New Hampshire while married to Ali, as well as bills sent to Ali's New Hampshire address with Lewis' name on them.

In Ali's own affidavit, he asserted that Lewis had lived with him in New Hampshire from July or August 1997 until at least June 1998. That claim was inconsistent with what the agency says were Ali's statements under oath at the January 2008 interview.

- 8 -

Immigration Services Officer Susan Coller, in a memorandum to the case file dated October 31, 2008, recommended denying the I-130 petition. The memorandum drew attention to the false documentation Ali had submitted in support of his Diversity Immigrant Visa application, and to the fact that "[t]he new affidavits [we]re self-serving to the latest I-130."

On November 14, 2008, USCIS sent Hassan a denial of her I-130 petition. The denial reiterated that visa petitioners bear the burden of establishing their eligibility for the benefit sought. See Matter of Brantigan, 11 I. & N. Dec. 493, 495 (BIA 1966). It pointed out that Lewis' new affidavit "contradict[ed] her previous oral and written testimonies" and that the new evidence meant to prove Lewis' cohabitation with Ali in New Hampshire was inconsistent with her receipt of Massachusetts welfare benefits at her Boston address through at least 1998. It concluded that "USCIS ha[d] clear and convincing evidence that [Ali] had previous involvement in a fraudulent marriage."

The USCIS denial informed Hassan that she could file a motion to reopen. See 8 C.F.R. § 103.5(a)(2) ("A motion to reopen must state the new facts to be provided in the reopened proceeding and be supported by affidavits or other documentary evidence."). Hassan did not file such a motion, nor at any time between the NOID and the final decision did she request to file additional

material beyond what was filed in response to the NOID, or request to have an evidentiary hearing.

Hassan sought review from the Board of Immigration Appeals, arguing primarily that substantial evidence did not support the denial. She did not argue that the agency was obliged to provide her with cross-examination or that she had requested it. The BIA dismissed her appeal on April 19, 2011, finding that "the record contain[ed] substantial and probative evidence of prior marriage fraud."

On June 2, 2015, Ali and Hassan filed this lawsuit in federal court. Their complaint alleged that USCIS had violated their Fifth Amendment procedural due process rights by denying the I-130 petition without offering a pre-decision evidentiary hearing. This is the only claim presented on appeal.[2] On June 7, 2016, the magistrate judge issued an order granting the government's motion for summary judgment. With respect to the due process claim, the magistrate judge concluded that "even assuming that the plaintiffs have a constitutionally protected liberty interest in this matter, due process did not require an evidentiary hearing." Ali, 2016 WL 3190190, at *6. As to whether the

---

[2] The complaint also alleged (1) that USCIS had erroneously focused its inquiry on 1997, when Lewis filed her I-130 petition, rather than on 1993, when she married Ali; and (2) that USCIS' decision was not supported by substantial evidence. The district court rulings on those issues are not appealed.

plaintiffs had shown prejudice from the purported denial of due process, she concluded that "the plaintiffs ha[d] not shown how a cross-examination of Lewis -- or of immigration agents concerning a seventeen-year-old interview with Lewis -- would potentially change [USCIS'] credibility determinations or ultimate decision." Id. at *8. She also decided the other issues in the defendants' favor.

On appeal, the plaintiffs focus exclusively on the due process issue and no longer press their other arguments.

II.

Federal jurisdiction was invoked in this case under the Administrative Procedure Act ("APA"), which instructs federal courts to "hold unlawful and set aside agency action, findings and conclusions found to be . . . contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2), (2)(B). Here, the claimed constitutional procedural due process violation is the failure sua sponte to provide a pre-decision evidentiary hearing, at which the plaintiffs say they would have cross-examined Lewis and the INS agents who interviewed her, in an effort to rebut USCIS' evidence of marriage fraud.

The APA also instructs courts to take "due account . . . of the rule of prejudicial error." Id. § 706. That statutory language references the harmless error standard that appellate courts normally apply when reviewing lower court decisions or

administrative action.  See Shinseki v. Sanders, 556 U.S. 396, 406-07 (2009).  Indeed, the Supreme Court has characterized § 706 as an "administrative law . . . harmless error rule."  Nat'l Ass'n of Home Builders v. Defs. of Wildlife, 551 U.S. 644, 659-60 (2007) (quoting PDK Labs. Inc. v. U.S. Drug Enf't Admin., 362 F.3d 786, 799 (D.C. Cir. 2004)) (choosing not to remand to agency because purported agency error "had no effect on the underlying agency action being challenged").

Whether or not Hassan or Ali has a protected liberty interest invoked by the denial of the I-130 petition,[3] and whether or not that interest was offended by the procedures followed, the plaintiffs have not met their burden to show how the purported error prejudiced them.

Hassan and Ali never asked USCIS for the opportunity to put on additional evidence, nor for an evidentiary hearing.  Their complaint states that no such hearing occurred, but does not allege that the plaintiffs asked for one when they responded to the NOID.  And even assuming the agency, rather than the plaintiffs, would be

---

[3]      We will assume arguendo that Kerry v. Din, 135 S. Ct. 2128 (2015), does not doom this suit by foreclosing any due process claim at all.  In our view, Din did not produce a definitive answer to the question of whether a citizen has a liberty interest, warranting due process, in residing in the United States with his or her noncitizen spouse.  And we will also assume that Din's holding that the process given there -- much less than was given here -- was sufficient, see id. at 2139-41 (Kennedy, J., concurring), does not control the outcome of this case, which involves a noncitizen husband already in the United States.

responsible for producing the two agents involved in Lewis' 1999 interview (an assertion not made by the plaintiffs), the plaintiffs never asked for production of the agents, much less to examine the agents about events that took place seventeen years earlier.[4]

There is no reason to think that, if an evidentiary hearing occurred, USCIS would not continue to rely on its own official records contemporaneous to the 1999 interview, as well as Lewis' signature affirming what appears to be her own handwritten statement, and suddenly credit Lewis' 2008 affidavit claiming she had never made the statement. Lewis' credibility as to the 2008 recanting affidavit was severely undercut by the flat inconsistency between the contemporary statement and the later statement, and by her withdrawal of the petition. Her statements that she had resided with Ali in New Hampshire for a period are undercut by the Massachusetts welfare records. As for the INS agents who interviewed Lewis, who are the only other persons aside from Lewis that the plaintiffs seek to have testify at an evidentiary hearing, the plaintiffs have made no showing that the agents would be available to be interviewed or would have anything different to say about the 1999 interview after seventeen years.

Further, to the extent the plaintiffs argue that Lewis' credibility might have been enhanced by live testimony or further

---

[4]     The record is silent as to whether the two agents are still employed by USCIS or by any other government agency.

- 13 -

evidence from her, Lewis acted as a witness for the plaintiffs in the post-NOID proceedings, not for the agency.  She knew of the other evidence undermining her newfound recantation, but addressed none of it by affidavit.  Indeed, no offer of proof was made to either the agency or the district court as to what the other evidence was that the plaintiffs wished to produce.  The plaintiffs simply have not shown how their preferred procedure would have made any difference.

### III.

We _affirm_ the judgment of the district court.