# Matter of P. SINGH, Beneficiary of a visa petition filed by Riwaj Anand Singh, Petitioner

*Decided August 23, 2019*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1)  The standard of proof necessary to bar the approval of a visa petition based on marriage fraud under section 204(c) of the Immigration and Nationality Act, 8 U.S.C. § 1154(c) (2012), is "substantial and probative evidence."

(2)  The degree of proof necessary to constitute "substantial and probative evidence" is more than a preponderance of evidence, but less than clear and convincing evidence; that is, the evidence has to be more than probably true that the marriage is fraudulent.

(3)  The nature, quality, quantity, and credibility of the evidence of marriage fraud contained in the record should be considered in its totality in determining if it is "substantial and probative."

(4)  The application of the "substantial and probative evidence" standard requires the examination of all of the relevant evidence and a determination as to whether such evidence, when viewed in its totality, establishes, with sufficient probability, that the marriage is fraudulent.

(5)  Both direct and circumstantial evidence may be considered in determining whether there is "substantial and probative evidence" of marriage fraud under section 204(c) of the Act, and circumstantial evidence alone may be sufficient to constitute "substantial and probative evidence."

FOR PETITIONER:  Marc Prokosch, Esquire, Bloomington, Minnesota

FOR THE DEPARTMENT OF HOMELAND SECURITY: Scott J. Langerman, Associate Counsel

BEFORE:  Board Panel:  MALPHRUS, MANN, and CREPPY, Board Members.

CREPPY, Board Member:

In a decision dated September 23, 2013, the Field Office Director ("Director") denied the Petition for Alien Relative (Form I-130) filed by the United States citizen petitioner on behalf of the beneficiary to accord him status as a parent pursuant to section 201(b)(2)(A)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1151(b)(2)(A)(i) (2012).  The petitioner has appealed from that decision.  We requested supplemental briefs, which both

parties have submitted. The petitioner's request for oral argument is denied. 8 C.F.R. § 1003.1(e)(7) (2019). The appeal will be dismissed.

## I. FACTUAL AND PROCEDURAL HISTORY

The petitioner is the son of the beneficiary, who was married to the petitioner's maternal grandmother in 2005. The beneficiary's wife filed a visa petition on his behalf, which the Director denied on November 30, 2009, finding that the marriage was entered into solely to obtain an immigration benefit for the beneficiary.[1] On March 13, 2012, the petitioner filed a visa petition on behalf of the beneficiary. The Director issued a notice of intent to deny on August 16, 2013, informing the petitioner of her intention to deny the visa petition based on the conclusion that the beneficiary married the petitioner's maternal grandmother for the purpose of evading the immigration laws. After considering the petitioner's response to the notice of intent to deny, the Director found, based on the record, that because the beneficiary entered into his marriage solely to obtain an immigration benefit, it is a fraudulent marriage that bars the approval of the current visa petition filed by his son. The Director denied the visa petition pursuant to section 204(c) of the Act, 8 U.S.C. § 1154(c) (2012).[2]

In making this determination, the Director noted that prior to the beneficiary's marriage, he was involved in a long-term relationship with his spouse's daughter, with whom he has three children. The petitioner is the oldest of the children, who were born in 1990, 1993, and 1999. The Director also relied on information from a June 5, 2009, Fraud Detection and National Security Office ("FDNS") report that documented a site visit to the marital residence of the beneficiary and his spouse.

According to the report, the beneficiary's wife was alone at the time of the visit, and she provided conflicting statements about who lived in the home. At first, she stated that she and the beneficiary and her daughter (the

---

[1] That decision was appealed. We remanded the case to the Director, who denied the visa petition again on March 16, 2012, finding that the marriage was a sham. We dismissed the appeal from that denial, concluding that the beneficiary's wife did not meet her burden to prove that her marriage to the beneficiary was bona fide for immigration purposes.

[2] Section 204(c) of the Act states, in pertinent part:

> [N]o petition shall be approved if (1) the alien has previously been accorded, or has sought to be accorded, an immediate relative or preference status as the spouse of a citizen of the United States or the spouse of an alien lawfully admitted for permanent residence, by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws, or (2) the Attorney General has determined that the alien has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws.

beneficiary's former partner) resided in the house.  She also explicitly stated that no children lived in the home.  Once inside, however, she stated that only she and the beneficiary lived there.  The officers reminded her that she had previously said her daughter lived in the home, to which she offered no response.  When she was asked who owned the house, she stated that she and the beneficiary were co-owners of the property.  When asked again to confirm who lived in the home, she stated that she and the beneficiary live there with the beneficiary's three children, and she denied that her daughter lived in the home, directly contradicting her earlier statements.

The FDNS report also stated that although the beneficiary's wife claimed to share the master bedroom with the beneficiary, an inspection of the room undermined that claim.  For example, mail found in that room was addressed to her husband and her daughter jointly or only to her daughter.  When the beneficiary's spouse was asked to find anything in the room that belonged to her, she was unable to do so.  She then told the officers that her daughter sometimes stays overnight in the master bedroom and that during those visits, she sleeps in the basement.  When she was asked if she sleeps alone in the basement on those occasions, she responded that she did.  However, when asked where the beneficiary sleeps during her daughter's visits, she changed her answer to say that he also sleeps in the basement bedroom.  She was unable to explain why she and the beneficiary would move to the basement to allow her daughter to sleep in the master bedroom during her visits. The officers then asked to see the basement bedroom, where they found items belonging solely to the beneficiary's wife, including plaques and certificates in her name on the wall, indicating that she was the sole occupant.

The officers told the beneficiary's spouse that they were aware that her daughter and the beneficiary co-owned the home, and they advised her of the ramifications of committing marriage fraud.[3]  At that point, according to the report, she admitted that she married the beneficiary as a favor to her daughter to allow him to remain in the United States.  She also admitted that she misrepresented her family's sleeping arrangements, stating that she lives in the basement, while the beneficiary and her daughter share the master bedroom.  As the officers were leaving the home, they noticed a photo of the beneficiary and his wife's daughter in an "intimate pose."

In response to the notice of intent to deny, the petitioner submitted an affidavit from the beneficiary's wife, in which she denied admitting that her marriage was a sham.  The petitioner also provided a statement from his mother, who claimed that she has no ongoing relationship with the

---

[3]  The record contains county property records verifying that the claimed marital home was purchased by the beneficiary and his wife's daughter in 2007.  There are also State motor vehicle records indicating that a vehicle is registered jointly to the beneficiary and his wife's daughter at that address.

beneficiary, that her mother's marriage to the beneficiary is legitimate, and that she bought the house with the beneficiary as a way to help provide for their children.  In addition, the petitioner submitted utility bills, tax returns, bank statements, and affidavits from acquaintances of the beneficiary and his wife to support his contention that their marriage is bona fide.  The record reflects that the beneficiary and his wife are still married.

The Director considered the petitioner's response to the notice of intent to deny, as well as the documentary evidence of a joint life between the beneficiary and his spouse, but she concluded that it was insufficient to overcome the "substantial and probative evidence" of marriage fraud.  The petitioner contests this determination on appeal, arguing that the Director improperly found that the evidence of fraud was "substantial and probative," which should be a high standard of proof that requires the evidence to be "clear, unequivocal, and convincing."  The Department of Homeland Security ("DHS") counters that "substantial and probative evidence" is a standard of review and that the standard of proof in the context of marriage fraud cases should be "substantial evidence," which requires less than a preponderance of the evidence of fraud to trigger section 204(c) of the Act.

## II.  ANALYSIS

A fraudulent or sham marriage is one that, despite its validity under the formal requirements of the law, was "entered into for the primary purpose of circumventing the immigration laws."  *Matter of Laureano*, 19 I&N Dec. 1, 2 (BIA 1983); *see also United States v. Elzahabi*, 517 F. Supp. 2d 1121, 1124 (D. Minn. 2007) (noting that "regardless of the formal validity of the underlying marriage, [the defendant] entered into a sham marriage to fraudulently secure a green card").  The "central question" in determining whether a sham marriage exists is whether the parties "intended to establish a life together at the time they were married."  *Matter of Laureano*, 19 I&N Dec. at 2–3 (citing *Bark v. INS*, 511 F.2d 1200, 1201 (9th Cir. 1975)); *Matter of McKee*, 17 I&N Dec. 332 (BIA 1980) (differentiating between nonviable and sham marriages).  Such a determination requires an examination of the conduct of the parties before and after the marriage to ascertain their intent, but "only to the extent that it bears upon their subjective state of mind at the time they were married."  *Matter of McKee*, 17 I&N Dec. at 334 (quoting *Bark*, 511 F.2d at 1202); *see also Lutwak v. United States*, 344 U.S. 604, 617 (1953).  If the marriage is valid at its inception, it is valid for immigration purposes.  *Matter of Boromand*, 17 I&N Dec. 450, 454 (BIA 1980).

### A.  Standard of Proof

In deciding if a marriage is a sham, the Director must examine the record to determine if there is substantial and probative evidence of fraud to warrant the denial of a visa petition under section 204(c) of the Act. The phrase "substantial and probative evidence" has never been included in section 204(c) since its enactment.[4] The term first appeared in *Matter of Agdinaoay*, 16 I&N Dec. 545, 546 (BIA 1978), where we held that "[a] finding that section 204(c) does apply to an alien must be based on evidence that is substantial and probative." Citing *Matter of Agdinaoay*, we next applied the term in *Matter of Tawfik*, 20 I&N Dec. 166, 167 (BIA 1990), holding that evidence of an attempt or conspiracy to evade the immigration laws must be "substantial and probative." We concluded there that although "any relevant evidence" could be considered in assessing marriage fraud, "a reasonable inference" of fraud is not sufficient to meet the "substantial and probative evidence" standard. *Id.* at 168. Although we did not clearly define the term "substantial and probative evidence," the facts in *Tawfik* illustrate the difference between a "reasonable inference" of fraud and "substantial and probative evidence."

In that case, the Director revoked the approval of a visa petition filed by the beneficiary's United States citizen spouse, finding that the beneficiary's prior marriage had been entered into for the purpose of evading the immigration laws. The revocation was based on the fact that, at the time of the denial, the beneficiary and the petitioner were living in different cities and on the Director's determination that the beneficiary was living with his first wife. As we noted in our decision, "No evidence beyond these conclusions is contained in the record." *Id.* at 169.

We held that although these factors may raise an inference of fraud, the inference was insufficient to constitute "substantial and probative evidence" that the couple intended to evade the immigration laws at the time of their marriage. We explained that the "mere fact that, at the time of the visa petition denial, the petitioner was living separate from the beneficiary is not evidence of an attempt or conspiracy . . . to enter into a marriage for the purpose of evading the immigration laws." *Id.* We also noted that the record did not contain evidence to support the conclusion that the beneficiary was living with his former wife when the visa petition was denied.

---

[4]   Section 204 of the Act was amended in 1965 to add the marriage fraud provision at section 204(c). Act of October 3, 1965, Pub. L. No. 89-236, §4, 79 Stat. 911, 915. Section 204(c) has subsequently been amended twice. Immigration and Technical Corrections Act of 1988, Pub. L. No. 100-525, § 9(g), 102 Stat. 2609, 2620; Immigration Marriage Fraud Amendments of 1986, Pub. L. No. 99-639, § 4(a), 100 Stat. 3537, 3543. The legislative history of section 204(c) does not indicate what evidentiary standard Congress intended to apply; nor does it explain why Congress did not specify a standard.

Thus, the evidence in that case was not substantial in quantity or quality. Nor was it probative of the couple's intent at the time they married, which is the central issue in marriage fraud cases. Therefore, the Director's inference of fraud did not constitute the "substantial and probative evidence" required to bar approval of a visa petition under section 204(c) of the Act. *Id.* at 170.

Several years after we issued *Matter of Tawfik*, the regulations for section 204(c) at 8 C.F.R. § 204.1(a)(2)(iv) (1992) were reorganized and amended to add the "substantial and probative evidence" language:

> Section 204(c) of the Act prohibits the approval of a visa petition filed on behalf of an alien who has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws. The director will deny a petition for immigrant visa classification filed on behalf of any alien for whom there is *substantial and probative evidence* of such an attempt or conspiracy, regardless of whether that alien received a benefit through the attempt or conspiracy. Although it is not necessary that the alien have been convicted of, or even prosecuted for, the attempt or conspiracy, the evidence of the attempt or conspiracy must be contained in the alien's file.

8 C.F.R. § 204.2(a)(1)(ii) (1993) (emphasis added).[5]

Thus, we set forth "substantial and probative evidence" as the standard of proof that would be commensurate with the consequences of a finding of marriage fraud, namely, a permanent bar to the approval of any visa petition. In turn, the regulations incorporated and codified it as the standard of proof required to establish marriage fraud under section 204(c). Since our decision in *Matter of Tawfik* and the 1993 amendment to the regulations that adopted the "substantial and probative evidence" standard, we have not published any precedent decision that specifically addresses the type and extent of evidence necessary to meet that standard or that applies *Matter of Tawfik*'s "reasonable inference" prohibition.

---

[5]  The Supplementary Information to the final rule of this regulation explains why this language was added:

> Thirty-five commenters suggested that the Service clarify the type and extent of the evidence necessary to substantiate a denial under 8 CFR 204.2(a)(1)(ii) for prior marriage fraud. The Service is currently required by regulation to notify the petitioner of any derogatory information contained in the record which will be used to support such a denial; however, there is room for further clarification based upon recent precedent decisions. Accordingly, the final rule will be amended to reflect that such evidence must be "substantial and probative," in accordance with the standard articulated in *Matter of Tawfik*, 20 I&N Dec. [166 (BIA 1990)].

Petition To Classify Alien as Immediate Relative of a United States Citizen or as a Preference Immigrant, 57 Fed. Reg. 41,053, 41,054 (1992) (final rule) (Supplementary Information).

The Federal court cases that have addressed marriage fraud do not clearly differentiate between the "substantial evidence" standard of judicial review and the "substantial and probative evidence" standard of proof we apply in section 204(c) cases. Although the courts have acknowledged that a finding of marriage fraud must be supported by "substantial and probative evidence," they have defined that standard by reference to cases that applied the "substantial evidence" standard of judicial review. For example, in *Zemeka v. Holder*, 989 F. Supp. 2d 122 (D.D.C. 2013), the court recognized the standard for determining marriage fraud as "substantial and probative evidence," but defined that standard as "more than a scintilla, but . . . something less than a preponderance of the evidence," the judicial standard by which the circuit courts review factual findings underlying decisions of the Board and the district courts. *Id.* at 129–30 (citation omitted). *See also, e.g.*, *Omokaro v. Hamilton*, No. CV H-15-2465, 2016 WL 4192058, at *3 (S.D. Tex. Aug. 9, 2016); *Simko v. B.I.A.*, 156 F. Supp. 3d 300, 310 (D. Conn. 2015); *Rojas v. Johnson*, No. 8:13-CV-2474-T-35TGW, 2014 WL 12527213, at *4 (M.D. Fla. Nov. 26, 2014). These cases are therefore of limited value in defining "substantial and probative evidence" in the marriage fraud context.

## B. Position of the Parties

The DHS argues that "substantial and probative evidence" in the context of marriage fraud cases is not a standard of proof, but is, instead, a standard of review employed by the courts. The DHS therefore urges us to adopt the "substantial evidence" definition in section 204(c) marriage fraud cases, which requires only that there be more than a scintilla but less than a preponderance of evidence of fraud in the record.[6] We are unpersuaded that we should do so.

First, "substantial and probative evidence" cannot be a standard of review in section 204(c) cases, because 8 C.F.R. § 1003.1(d)(3)(iii) clearly states that the Board applies a de novo standard of review to all questions of fact and law in any appeal from the denial of a visa petition.

---

[6] The DHS cites the "reasonable, substantial, and probative" evidence standard in *Woodby v. INS*, 385 U.S. 276 (1966), to support its argument that the "substantial and probative evidence" language in the marriage fraud regulation refers to a standard of review rather than a standard of proof. The Supreme Court expressly stated in *Woodby* that the "reasonable, substantial, and probative" standard in former section 106(a)(4) of the Act, 8 U.S.C. § 1105a(a)(4) (1994), "relates exclusively to judicial review," *id.* at 282–83, and held that the burden of proof in deportation proceedings is "clear, unequivocal, and convincing evidence," *id.* at 286. Thus, that case provides little guidance in determining the meaning of "substantial and probative evidence" in the marriage fraud context.

The DHS also argues that "substantial and probative evidence" cannot be a standard of proof, because in visa petition proceedings, the only standard of proof is a preponderance of the evidence, under which the burden always lies with the petitioner and never shifts to the U.S. Citizenship and Immigration Services ("USCIS"). *See* section 291 of the Act, 8 U.S.C. § 1361 (2012); *Matter of Rehman*, 27 I&N Dec. 124, 125 (BIA 2017).

However, there are statutory provisions and regulations that impose a standard of proof other than a preponderance of evidence in the visa petition context. For example, under section 204(a)(2)(A) of the Act, a lawful permanent resident who obtained that status through marriage and who submits a petition for an alien based on a second marriage within 5 years of acquiring permanent residence is subject to a presumption of fraud. *See Matter of Patel*, 19 I&N Dec. 774, 783 (BIA 1988). In order to rebut the presumption, the petitioner bears the burden of establishing by clear and convincing evidence that the prior marriage was not entered into for purposes of evading the immigration laws. *Id.*; 8 C.F.R. § 204.2(a)(1)(i)(A)(*1*), (C).

This is consistent with the Act's treatment of other marriages that carry a presumption of fraud. For example, where a marriage occurs during the pendency of removal proceedings, fraud is presumed under section 204(g) of the Act. In such cases, the presumption will not apply if the alien establishes by clear and convincing evidence that the marriage is bona fide`. Section 245(e)(3) of the Act, 8 U.S.C. § 1255(e)(3) (2012); *Matter of Velarde*, 23 I&N Dec. 253, 256 (BIA 2002). Moreover, in regard to where the burden lies for purposes of section 204(c)(1), we have held that "where there is evidence in the record to indicate that the beneficiary has been [involved] in a marriage fraud conspiracy, *the burden shifts to the petitioner* to establish that the beneficiary did not seek nonquota or preference status based on a prior fraudulent marriage." *Matter of Kahy*, 19 I&N Dec. 803, 806–07 (BIA 1988) (emphasis added).

In sum, the petitioner has the initial burden to prove the bona fides of the marriage by a preponderance of the evidence. Where the record contains evidence of fraud, the USCIS must advise the petitioner of any derogatory evidence, which the petitioner must rebut by the appropriate standard of proof. *See* 8 C.F.R. § 103.2(b)(16)(i) (2019); *see also Zemeka*, 989 F. Supp. 2d at 130 ("Upon receiving the [notice of intent to deny], the burden shifts to the petitioner to rebut USCIS's finding of fraud and establish that a prior marriage was not 'entered into for the purpose of evading immigration laws.'" (citation omitted)). If the USCIS denies the petition under section 204(c) of the Act based on marriage fraud, the record must contain substantial and probative evidence of such fraud. *See Saleh v. Holder*, 54 F. Supp. 3d 1163, 1169 (D. Nev. 2014) ("[T]he Government has the

burden of providing substantial and probative evidence that the prior marriage was a sham." (citation omitted)).

In support of the petitioner's argument that "substantial and probative evidence" of fraud means "clear, unequivocal, and convincing evidence," he cites to our statement in *Matter of Tawfik*, 20 &N Dec. at 168, that although the Director should not ordinarily give conclusive effect to determinations made in a prior proceeding, an exception may apply "where the beneficiary has previously been found deportable based on a determination, supported by clear, unequivocal, and convincing evidence, that that beneficiary became a party to a fraudulent marriage for the purpose of entering the United States as an immigrant." However, the import of that statement was not that this was the level of proof necessary to meet the substantial and probative evidence standard. Rather, as we explained, a finding of deportability requires a high standard of clear, unequivocal, and convincing evidence, so such a finding would necessarily be sufficient to establish substantial and probative evidence of marriage fraud without any further evidence.

We have specifically stated that evidence of marriage fraud for purposes of section 204(c) must be "substantial and probative," and the drafters of the regulations incorporated that standard. *See Matter of Tawfik*, 20 I&N Dec. at 167–68; 8 C.F.R. § 204.2(a)(1)(ii). If there had been an intent to require proof of fraud by "clear, unequivocal, and convincing evidence," that standard would have been adopted instead.

In further support of his argument that substantial and probative evidence should be interpreted to be a high standard of proof, the petitioner points to several cases in which direct evidence of fraud, such as written confessions and proof of payment to marry, were found to constitute substantial and probative evidence. However, the fact that such evidence was sufficient to meet the substantial and probative evidence standard of proof does not necessarily mean that it would be required in all cases. Thus, we reject the petitioner's argument that substantial and probative evidence means "clear, unequivocal, and convincing evidence."

For these reasons, we hold that the "substantial and probative evidence" language in *Matter of Tawfik* that is codified at 8 C.F.R. § 204.2(a)(1)(ii) refers to the standard of proof required to establish marriage fraud, not to the standard of review.

## C. Degree of Proof Required

The "substantial and probative evidence" standard of proof required by 8 C.F.R. § 204.2(a)(1)(ii) refers to the quality and quantity of competent, credible, and objective evidence. *See Matter of Tawfik*, 20 I&N Dec. 168; *Matter of E-M-*, 20 I&N Dec. 77, 80 (Comm. 1989) (stating that "the purpose

of evidence is to ascertain the truth" and the "[t]ruth is to be determined not by the quantity of the evidence alone, but by its quality"). Whether the evidence in any given case is sufficiently substantial and probative to support a finding of marriage fraud will depend upon the factual circumstances of each case. *Matter of E-M-*, 20 I&N Dec. at 79.

Given that the consequence of engaging in marriage fraud under section 204(c) of the Act is a permanent bar to the approval of any future visa petition, the evidence of fraud must be relatively high to trigger the bar. We conclude that the degree of proof required for a finding of marriage fraud sufficient to support the denial of a visa petition under section 204(c) of the Act should be higher than a preponderance of the evidence and closer to clear and convincing evidence. Thus, we hold that to be "substantial and probative," the evidence must establish that it is more than probably true that the marriage is fraudulent.[7] In clarifying the degree of proof required under section 204(c), we note that this is consistent with the standard we currently employ in adjudicating visa petitions involving marriage fraud.

### D. Substantial and Probative Evidence of Marriage Fraud

The application of the "substantial and probative evidence" standard requires the examination of all of the relevant evidence and a determination as to whether such evidence, when viewed in its totality, establishes, with sufficient probability, that the marriage is fraudulent. *Matter of E-M-*, 20 I&N Dec. at 80. "Direct evidence" is "[e]vidence that is based on personal knowledge or observation and that, if true, proves a fact without inference or presumption." *Evidence*, *Black's Law Dictionary* (11th ed. 2019). A sworn statement by the parties admitting that the marriage is fraudulent, that money changed hands, and that the couple did not intend to live together or consummate the marriage is direct evidence of fraud that is "substantial and probative." *See, e.g.*, *Ali v. United States*, 849 F.3d 510, 512 (1st Cir. 2017); *Eid v. Thompson*, 740 F.3d 118, 121 (3d Cir. 2014); *Oddo v. Reno*, 175 F.3d 1015 (4th Cir. 1999) (per curiam) (unpublished table decision); *Ghaly v. INS*, 48 F.3d 1426, 1427–28 (7th Cir. 1995). *But see Ching v. Mayorkas*, 725 F.3d 1149, 1154–56 (9th Cir. 2013).

---

[7]    *Matter of E-M-*, 20 I&N Dec. at 80, explained the relevant degrees of proof as follows: "[W]hen something has to be proved by clear and convincing evidence, the proof must demonstrate that it is highly probably true. But, when something is to be established by a preponderance of the evidence it is sufficient that the proof only establish that it is probably true." Our standard for section 204(c) cases is higher than a preponderance of the evidence but less than clear and convincing evidence, which we refer to as "more than probably true."

By contrast, "circumstantial evidence" is "[e]vidence based on inference and not on personal knowledge or observation." *Black's Law Dictionary*, *supra*. We have explained that "any relevant evidence" can be considered in establishing marriage fraud, but the evidence relied upon must create more than a "reasonable inference" of fraud. *Matter of Tawfik*, 20 I&N Dec at 168. Notably, we did not expressly require "direct" or "affirmative" evidence of fraud. In fact, neither the statute, the regulation, nor our own precedent prohibits us from relying on circumstantial evidence, which may alone be sufficient to constitute "substantial and probative evidence" of marriage fraud under section 204(c). That is, in certain cases, the quality and quantity of the circumstantial evidence may be sufficient to create such a strong inference of fraud that it rises to the level of substantial and probative.

Most of the Federal court cases addressing marriage fraud under section 204(c) of the Act involve direct evidence of fraud, often a sworn statement admitting to the fraud that has not been credibly refuted or rebutted. However, an admission or other such direct evidence is not necessary to establish marriage fraud. *See Atieh v. Riordan*, 797 F.3d 135, 140 (1st Cir. 2015). In addition to *Atieh*, other courts have found that circumstantial evidence alone is sufficient to establish fraud under section 204(c).

For example, in *Omokoro v. Hamilton*, 688 F. App'x 263, 264 (5th Cir. 2017) (per curiam), the United States Court of Appeals for the Fifth Circuit held that a beneficiary's marriage to a United States citizen was fraudulent based on the facts that her husband married two other women during the first year of their marriage and that she filed her taxes as a single person while she was married to him. Moreover, the couple failed to provide evidence that they ever lived at the same address or combined their finances, and there were inconsistencies in the record regarding their wedding date. In addition, there was "no substantive effort to negate the USCIS' finding" that the prior marriage was a sham—just the bald assertion that the marriage was entered into in good faith. *Id.*; *see also Dinh v. United States*, 670 F. App'x 505, 506 (9th Cir. 2016) (finding substantial and probative evidence of marriage fraud where the couple first met on the day of the wedding, which was arranged by a broker; the beneficiary left the State on the day of the wedding and never saw her spouse again; and the beneficiary was not mentioned on any joint bank accounts, insurance, or leases). Thus, both direct and circumstantial evidence may be considered in determining whether there is "substantial and probative evidence" of marriage fraud under section 204(c) of the Act.

There are a number of factors that should be considered in determining whether the "substantial and probative" evidence standard has been met. Significant inconsistencies coupled with minimal documentary evidence of a shared life may support a conclusion that a petitioner has not met his or her burden to establish the bona fides of the marriage. *See, e.g.*, 8 C.F.R.

§ 204.2(a)(1)(iii)(B) (setting forth evidence to establish the bona fides of a marriage). Where there are some minor inconsistencies and the documentary evidence is limited, they should be considered in assessing whether there is fraud, but these factors, without more, would not likely be sufficient to satisfy the substantial and probative evidence standard for marriage fraud.

However, evidence that the parties knowingly and deliberately attempted to mislead or deceive immigration officials regarding their cohabitation, joint finances, or other aspects of the marriage strongly indicate fraud. Detailed reports from on-site visits and field investigations are especially important pieces of evidence that may reveal the presence of fraud. Evidence that the parties have other romantic partners, with whom they may have children, is also a significant consideration, especially when these facts are either not disclosed or are deliberately concealed. Statements from family members, employers, or acquaintances indicating they do not know about the marriage or that the parties told them the marriage is a sham are additional indicia of fraud. Other circumstantial evidence that may support a finding of marriage fraud includes evidence that one or both parties have been filing taxes as single persons during the marriage or otherwise holding themselves out to be single while representing to immigration officials that they are still married. Official Government documents indicating fraud carry more evidentiary weight than informal evidence of a bona fide marriage, such as insurance policies or bank account statements.

Moreover, although section 204(c) of the Act applies only where the *beneficiary* is found to have engaged in fraud, actions of a petitioning spouse may be relevant to the inquiry. For example, where there is evidence that the petitioner has been married to several beneficiaries, especially if a connection between the petitioner and a former spouse has continued through joint property ownership, finances, or benefits, the likelihood of the beneficiary's involvement in a fraudulent scheme should be considered. In assessing whether a beneficiary's denial of involvement in fraud is credible, the Director should consider if a United States citizen petitioner might have a motive "to defraud the United States on [the beneficiary's] behalf without [his or her] knowledge." *Zemeka*, 989 F. Supp. 2d at 131 (citation omitted).

Furthermore, affidavits alone will generally not be sufficient to overcome evidence of marriage fraud in the record without objective documentary evidence to corroborate the assertions made by the affiants. 8 C.F.R. § 204.2(a)(1)(i)(B)(5) ("Affidavits should be supported, if possible, by one or more types of documentary evidence . . . ."); *Matter of Patel*, 19 I&N Dec. at 786 (deeming the affidavits in that case to be "credible and worthy of considerable weight because they are detailed, internally consistent, and plausible; they include explanations of how the affiants acquired knowledge of the facts set forth; and they are corroborated by historical evidence").

In isolation, these factors may not necessarily be sufficient to constitute substantial and probative evidence of marriage fraud. However, "even if particular facts 'may not [be] sufficient individually to establish a finding of fraud,' those same facts, when taken together, may provide 'ample support' for an agency to infer a fraudulent marriage." *Atieh*, 797 F.3d at 140 n.4 (citation omitted). In determining if the evidence of marriage fraud is substantial and probative, that is, whether it establishes that it is more than probably true that the marriage is fraudulent, the nature, quality, quantity, and credibility of the evidence in the record should be considered in its totality. This assessment may be based on either direct or circumstantial evidence.

## E. Application to the Petitioner

The record in this case supports the Director's determination that approval of the visa petition is barred under section 204(c) of the Act. The record contains "substantial and probative evidence" of marriage fraud by the beneficiary. 8 C.F.R. § 204.2(a)(1)(ii). The admission of the beneficiary's wife during the site visit that her marriage to the beneficiary is a sham is the most direct evidence of fraud. Although the beneficiary's wife has subsequently denied making this statement, her admission was recorded by Government officials in the course of conducting an investigation, and the petitioner has not overcome the presumption that such officials properly discharge their duties in good faith. *See United States v. Armstrong*, 517 U.S. 456, 464 (1996) (holding that "in the absence of clear evidence to the contrary, courts presume that [Government officials] have properly discharged their official duties" (citation omitted)); *Matter of Grijalva*, 21 I&N Dec. 27, 37 (BIA 1995).

Moreover, other evidence in the record supports the reliability of the admissions made by the beneficiary's wife. Her multiple inconsistent statements regarding who lived in the home, and in which bedrooms, undermine her credibility and reflect an attempt to mislead the officers into believing that she was in a marital relationship with the beneficiary. During the site visit, a number of physical discrepancies were noted. The officers noticed a photo of the beneficiary and his wife's daughter in an "intimate pose," and the master bedroom contained no evidence that it was inhabited by his wife. To the contrary, the evidence found there related solely to the beneficiary and his wife's daughter.

In addition, articles belonging to the beneficiary's spouse were found in a basement bedroom. There has been no explanation why her daughter, rather than the beneficiary's spouse, occupied the master bedroom, a point conceded by the petitioner on appeal. The record also contains documentary

evidence that the beneficiary and his wife's daughter jointly own the house, contrary to his wife's claim that she owned the home during the site visit.[8]

These factors, coupled with the highly improbable circumstance of the beneficiary marrying the grandmother of his children, are sufficient to constitute substantial and probative evidence that the marriage was entered into to evade the immigration laws. The Director properly gave greater weight to the site visit report than to other evidence of record, including the evidence submitted in response to the notice of intent to deny, and she reached her own independent conclusion based on the evidence before her. *See Matter of Tawfik*, 20 I&N Dec. at 168.

The petitioner argues on appeal that the record contains no evidence of fraud "other than the disputed statement" by the beneficiary's spouse that she married the beneficiary as a favor to her daughter. That contention is demonstrably untrue. Even disregarding the disputed admission, the remaining evidence creates a strong inference that the marriage between the beneficiary and his spouse is a sham. This constitutes substantial and probative evidence that the purpose of the marriage was to evade the immigration laws. Furthermore, the fact that the beneficiary and his spouse remain married and have submitted some documentary evidence of a joint life does not overcome the substantial and probative evidence of fraud in this case.[9] The question is not whether a couple currently resides together, but whether they intended to establish a life together as husband and wife at the time they were married. *Matter of McKee*, 17 I&N Dec. at 334; *see also Roe v. INS*, 771 F.2d 1328, 1331 (9th Cir. 1985); *Matter of Boromand*, 17 I&N Dec. at 454.

## IV. CONCLUSION

In light of the substantial and probative evidence of marriage fraud, we conclude that the record supports the Director's decision that the beneficiary entered into a sham marriage for the purpose of procuring an immigration benefit. Approval of the visa petition is therefore barred by section 204(c) of the Act. Accordingly, the petitioner's appeal will be dismissed.

**ORDER:** The appeal is dismissed.

---

[8] The summary of findings by the FDNS also notes that the tip-line received a tip stating that the beneficiary married his spouse to "get his papers."

[9] The petitioner argues that the validity of the beneficiary's marriage is evidenced by the fact that he could have adjusted his status by marrying his spouse's daughter, a lawful permanent resident, instead of marrying the petitioner's grandmother. However, absent other facts, including the availability of visas under a different category or her ability to confer immigration status, this assertion is speculative and does not support the claim that the beneficiary's marriage is bona fide.