# Matter of Anthonia Betty NWAGWU, Beneficiary of a visa petition filed by Clovis Ndubuisi Nwagwu, Petitioner

*Decided by Board April 7, 2026[1]*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

Good and sufficient cause existed to revoke the prior approval of a visa petition because the record contained substantial and probative evidence of marriage fraud between the beneficiary and her prior spouse.

FOR THE PETITIONER:  Robert M. Birach, Esquire, Southfield, Michigan

FOR THE DEPARTMENT OF HOMELAND SECURITY:  Denisa Turshinka, Associate Counsel

BEFORE:  Board Panel:  CREPPY, HUNSUCKER, and GEMOETS, Appellate Immigration Judges.

CREPPY, Appellate Immigration Judge:

This matter was last before this Board on July 3, 2019, when we remanded the record for further consideration of the record evidence.  The petitioner now appeals from the October 21, 2020, decision of the Field Office Director ("Director") revoking the previously approved visa petition that was filed on behalf of the beneficiary as a spouse of a United States citizen under section 201(b)(2)(A)(i) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1151(b)(2)(A)(i) (2018).  The Department of Homeland Security opposes the appeal.  The appeal will be dismissed.

Under section 205 of the INA, 8 U.S.C. § 1155 (2018), the approval of a visa petition may be revoked for "good and sufficient cause."  *Matter of Ho*, 19 I&N Dec. 582, 588 (BIA 1988).  Good and sufficient cause to revoke an approved visa petition exists if the evidence in the record at the time of the decision, including explanatory and rebuttal evidence, warrants a denial based on the petitioner's failure to sustain his or her burden of proof.  *See*

---

[1]  Pursuant to Order No. 6872-2026, dated May 26, 2026, the Acting Attorney General designated the Board's decision in *Matter of Nwagwu* (BIA Apr. 7, 2026), as precedent in all proceedings involving the same issue or issues.  *See* 8 C.F.R. § 1003.1(g)(3) (2026).  Editorial changes have been made consistent with the designation of the case as a precedent.

*Matter of Arias*, 19 I&N Dec. 568, 569–70 (BIA 1988); *Matter of Estime*, 19 I&N Dec. 450, 451–52 (BIA 1987).

The Director's decision revoked the visa petition after concluding that it could not be approved on behalf of the beneficiary because she had previously sought to be accorded immediate relative status as the spouse of a United States citizen through a marriage determined to have been entered into for the purpose of evading the immigration laws. *See* INA § 204(c), 8 U.S.C. § 1154(c) (2018). Under section 204(c) of the INA, 8 U.S.C. § 1154(c), the evidence must show that the beneficiary's prior marriage to her former spouse was entered into for the purpose of evading the immigration laws. An affirmative finding based upon substantial and probative evidence that the beneficiary's prior marriage was actually fraudulent is required. *See* 8 C.F.R. § 204.2(a)(1)(ii) (2026); *see also Matter of P. Singh*, 27 I&N Dec. 598, 602 (BIA 2019); *Matter of Tawfik*, 20 I&N Dec. 166, 167 (BIA 1990).

This case has a lengthy procedural history, which we decline to recount here. However, we emphasize that the present marriage fraud inquiry pertains solely to the beneficiary's prior marriage, as her marriage to the petitioner has been deemed bona fide. Upon de novo review, we agree that there was "good and sufficient cause" to revoke the prior approval of the visa petition because the record contains substantial and probative evidence of marriage fraud between the beneficiary and her prior spouse. *See* 8 C.F.R. § 1003.1(d)(3)(iii) (2026); *Matter of Ho*, 19 I&N Dec. at 588–90; *Matter of P. Singh*, 27 I&N Dec. at 602; *see also Matter of Tawfik*, 20 I&N Dec. at 167.

We have considered the petitioner's arguments regarding the beneficiary's marriage to her former husband, who has been deceased since November 1996. In doing so, we recognize the unfortunate circumstances of his passing. We also acknowledge that the record contains evidence that the beneficiary and her former husband held themselves out as married, had joint bank accounts, vehicle registrations, and made purchases together. As such, we acknowledge that there is some evidence in the record to support the petitioner's contentions. However, such evidence is ultimately outweighed by the significant negative evidence reflecting the beneficiary's prior marriage was fraudulent.

Of particular importance is the fact that, in August 1996, the beneficiary's former husband signed and swore to a handwritten affidavit detailing the fraudulent nature of his marriage to the beneficiary. The affidavit includes the signatures of two additional parties, including his mother, who would

have had firsthand knowledge of his condition at that time. Although his mother later submitted a letter, dated in 2004, stating that she was not paying attention to the conversation between her son and the investigator who spoke with him and that she believed he could not have understood the questions posed, this statement was filed almost a decade later and does not persuade us to discount the fact that she contemporaneously signed the 1996 affidavit as a witness and no such concerns were apparently raised in or around 1996. Also, to the extent the petitioner relies on a 2005 letter from a doctor evaluating the beneficiary's former husband's medicine regimen relative to his possible cognitive function, we note that this speaks generally to his possible condition in the months of his illness but reflects no firsthand knowledge of his condition on the date of the sworn affidavit. We also note the concerns of the United States Citizenship and Immigration Services ("USCIS") regarding factual discrepancies in this letter, which were articulated in the 2020 notice of intent to revoke. Considering the full record, we are persuaded that the sworn affidavit by the beneficiary's former husband should be deemed truthful and reliable, and the appellate arguments do not persuade us otherwise.

In conjunction with this affidavit, the September 3, 1996, memorandum contained within the record states that women, identifying themselves as the mother and sister of the beneficiary's former husband, were present during the August 1996 site visit. We have no reason to doubt the reliability of this memorandum, which was prepared by a United States Government official in the course of their business. Per the memorandum, the mother stated that she did not know her son was married, and she was unable to identify a photograph of the beneficiary. The memorandum contains significant detail, including specific responses from individuals during a conversation, and it was prepared within a week of the signing of the affidavit by the beneficiary's former husband regarding the fraudulent marriage. Furthermore, while the memorandum acknowledges that his condition was poor in July 1996, it does not note any indicia of cognitive impairment for the August visit. We discern no reason for why the memorandum would acknowledge his poor condition in one instance but not another if that were the case. Even more, it states his mother and a sister were present during the completion of the August 1996 affidavit, and it does not note that either relative raised concerns about any impairment or cognitive difficulties at that time.[2] Considered together, the August 1996 affidavit by the beneficiary's

---

[2] As explained in the Director's 2020 decision and the notice of intent to revoke, the relationship between the beneficiary's former husband and another woman is unsubstantiated. While she provided a statement indicating that she is his sister, there is insufficient documentation to support this claim, and it is not apparent if she is the sister referenced in the investigator's notes. The woman does not indicate that she has any

former husband and the memorandum regarding the context of how the affidavit was prepared are highly persuasive evidence that the marriage was fraudulent.

We also agree with the Director that it is highly relevant that the death certificate of the beneficiary's former husband lists him as "never married." Despite the petitioner's appellate arguments regarding the reliability of this document, it is an official vital record. While the record does contain a marriage certificate for the beneficiary and her former husband, it is not improbable for parties to register a fraudulent marriage with a marriage certificate. Instead, we look to the actions of the couple, before and after the marriage, to evaluate the sincerity of the relationship. While a marriage certificate constitutes legal documentation of a marriage, it is not proof of the marriage's bona fide nature. We find it more persuasive that, following the death of the beneficiary's former husband, no one recognized that such a marital relationship had ever existed, particularly in conjunction with the other record evidence indicating that the marriage was not bona fide but was instead fraudulent.

Ultimately, the affidavit by the beneficiary's former husband and the memorandum reflecting family-specific evidence, i.e., his mother's inability to recognize the beneficiary, as well as the death certificate and other similar evidence carry far more weight than self-serving documents such as the beneficiary's name on a bill or school registry. The petitioner's appellate arguments seek to impugn the legitimacy of the USCIS investigation or otherwise raise interpretations of the facts that are contrary to the Director's finding but do not overcome the issues raised by the Director. It is the petitioner who bears the burden to provide sufficient evidence to show that the marriage was legitimate. Here, the petitioner has failed to sustain his burden of proof, as the explanatory and rebuttal evidence are insufficient to outweigh the evidence of fraud.[3]

For the foregoing reasons, and for the other reasons stated in the Director's 2020 decision and the 2020 notice of intent to revoke, we agree that there is "substantial and probative" evidence of marriage fraud in the

---

firsthand knowledge of the preparation of the affidavit by the beneficiary's former husband, which in itself diminishes her claims regarding the reliability and veracity of the affidavit.

[3] The petitioner's allegations regarding the existence of a videotape, even if credited, similarly do not outweigh the persuasive evidence of fraud given the beneficiary's former husband's eventual disclosure regarding the nature of the marriage and other evidence that the marriage was not bona fide.

beneficiary's prior marriage. *Matter of P. Singh*, 27 I&N Dec. at 602; *Matter of Tawfik*, 20 I&N Dec. at 167. Thus, we affirm the Director's determination that there was good and sufficient cause to revoke the approval of the visa petition. *See Matter of Ho*, 19 I&N Dec. at 588–90; *see also Matter of P. Singh*, 27 I&N Dec. at 602; *Matter of Tawfik*, 20 I&N Dec. at 167.

**ORDER:** The petitioner's appeal is dismissed.