NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

JUN 26 2026

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| TRARAT SAMUELS; HOWARD SAMUELS, <br><br> Plaintiffs - Appellants, <br><br> v. <br><br> UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES; MARKWAYNE MULLIN, in his Official Capacity, Secretary, U.S. Department of Homeland Security; JOSEPH B. EDLOW, in his Official Capacity, Director, U.S. Citizenship and Immigration Services; LORY C. TORRES, in her Official Capacity, Los Angeles Field Office Director, U.S. Citizenship and Immigration Services; BOARD OF IMMIGRATION APPEALS; TODD BLANCHE, Acting Attorney General, Attorney General, <br><br> Defendants - Appellees. | No. 24-6280 <br><br> D.C. No. 2:24-cv-00176-SVW-PD <br><br> MEMORANDUM[*] |

Appeal from the United States District Court
for the Central District of California
Stephen V. Wilson, District Judge, Presiding

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Submitted June 24, 2026[]
Pasadena, California

Before: FRIEDLAND, FORREST, and DESAI, Circuit Judges.

Plaintiffs-Appellants Trarat and Howard Samuels,[1] a married couple, appeal the district court's grant of summary judgement in favor of the United States Citizenship and Immigration Services ("USCIS"), arguing that USCIS improperly applied the "marriage fraud" bar, 8 U.S.C. § 1154(c), to deny their visa petition based on its finding that Trarat had a prior fraudulent marriage to Sattsawat Chuakrung. Plaintiffs argue that (1) there was not substantial and probative evidence that Trarat and Chuakrung's marriage was fraudulent, and (2) the agency did not properly apply the burden shifting framework and failed to consider Plaintiffs' rebuttal evidence that Trarat's first marriage was bona fide.

We review the district court's summary judgment decision de novo. *Sierra Club v. Babbitt*, 65 F.3d 1502, 1507 (9th Cir. 1995). Here, this means that we review the agency's decision using the same standard the district court did.[2] *Id.* "We must set aside the BIA's decision if it is 'arbitrary, capricious, an abuse of

---

[**] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

[1] For clarity, Trarat and Howard Samuels will be identified by their first names.

[2] Plaintiffs argue that the district court applied the wrong standard of review. We need not reach that argument because we do our own independent review of the agency's decision.

discretion, or otherwise not in accordance with law.'" *Zerezghi v. U.S. Citizenship & Immigr. Servs.*, 955 F.3d 802, 807 (9th Cir. 2020) (quoting 5 U.S.C. § 706(2)(A)). Although the agency must find that there was marriage fraud by "substantial and probative evidence," a standard that is "at least as high as a preponderance of the evidence," *id.* at 816, on review, we determine whether there was "substantial evidence" to support the finding, *id.* at 814 n.6.

1. To the extent that Plaintiffs ask us to reweigh the evidence of fraud in Trarat's first marriage and independently determine whether it constitutes "substantial and probative" evidence, we decline. On review, we must determine whether the record supports the agency's finding that there was "substantial and probative" evidence of fraud in the marriage between Trarat and Chuakrung. *Id.* at 814 n.6. We conclude that it does.

Circumstantial evidence alone can be sufficient to constitute "substantial and probative evidence" of marriage fraud. *Matter of P. Singh*, 27 I. & N. Dec. 598, 608 (BIA 2019). "[E]vidence that the parties knowingly and deliberately attempted to mislead or deceive immigration officials regarding their cohabitation, joint finances, or other aspects of the marriage strongly indicate fraud." *Id.* at 609. "Evidence that the parties have other romantic partners, with whom they may have children, is also a significant consideration, *especially when these facts are either not disclosed or are deliberately concealed*." *Id.* (emphasis added).

Trarat, Howard, and Chuakrung all gave inconsistent and occasionally conflicting stories about their relationships. When Trarat was married to Chuakrung, Chuakrung started applying for legal permanent residency for her. In paperwork submitted during that process, Trarat and Chuakrung claimed to have lived in two residences together: one on Cochran Ave., where they purportedly lived together prior to getting married and in the early months of their marriage, and one on Hobart Blvd. No documents submitted to the agency by Plaintiffs link Chuakrung to the Cochran Ave. address. The lease for the Cochran Ave. apartment, obtained by immigration officers during a site visit, listed Howard and Trarat as the sole tenants with a maximum occupancy of two, and on the rental application for the Cochran apartment, Howard listed Trarat as his "girlfriend." Immigration officers interviewed the property manager, and she remembered Howard and Trarat, noting that she thought they were married. During a USCIS interview, when asked where she had lived with Chuakrung, Trarat did not list the Cochran apartment.

In an interview with immigration officers, six months before Chuakrung and Trarat divorced, Chuakrung gave conflicting answers about when he and Trarat had lived at Cochran Ave. during an unannounced visit to a home on Fountain Ave. that was listed as Chuakrung's residence prior to his having moved in with Trarat. He stated that he had lived on Fountain Ave. since before he and Trarat

24-6280

were married and that he visits the Hobart apartment every afternoon but was unable to recall the Hobart apartment's address. He also claimed that he did not see the mother of the child he had before marrying Trarat anymore, but later admitted that he had travelled to Thailand with her during his marriage to Trarat. Immigration officers observed mail addressed to the mother of his child at the Fountain Ave. home during the visit.

In addition, during USCIS interviews, Howard stated that he started dating Trarat before she married Chuakrung, but Trarat stated that she did not begin dating Howard until after she divorced Chuakrung. These numerous inconsistencies and apparent attempts to mislead the agency, among others, provide substantial evidence to support the agency's determination that Trarat's marriage to Chuakrung was fraudulent.

2. The agency did not err in applying the governing burden-shifting framework. After USCIS issued a Notice of Intent to Deny ("NOID") to Plaintiffs based on its finding that there was substantial and probative evidence of marriage fraud in Trarat's marriage to Chuakrung, Plaintiffs submitted rebuttal evidence. The agency considered the rebuttal evidence, including affidavits, joint checking account statements, a life insurance notice, and photographs, and concluded that it did not overcome the substantial and probative evidence of marriage fraud in the record. Based on the inconsistencies in their statements, the agency appropriately

deemed Howard, Trarat, and Chuakrung not credible and disregarded their affidavits. The agency also appropriately disregarded the other affidavits because they were not accompanied by additional evidence to support their assertions. *Id.* (citing 8 C.F.R. § 204.2(a)(1)(i)(B)(5)) ("[A]ffidavits alone will generally not be sufficient to overcome evidence of marriage fraud in the record without objective documentary evidence to corroborate the assertions made by the affiants."). The agency described the photographs, including photographs of Trarat and Chuakrung's wedding, and appropriately concluded that they do not "clearly establish [Trarat and Chuakrung] as a married couple." The fact that Trarat and Chuakrung were legally married and had a wedding does not establish that their marriage was bona fide. The agency did not err by concluding that this rebuttal evidence did not overcome the evidence of marriage fraud.[3]

   **AFFIRMED.**

---

[3] Because we conclude that the denial of the I-130 petition was not erroneous, we do not need to address Plaintiffs' argument that their I-485 Adjustment of Status denial should be reopened based on the erroneous denial of the I-130 petition.