## MATTER OF KAHY

In Visa Petition Proceedings

A-28379516

*Decided by Board November 23, 1988*

(1) Section 204(c) of the Immigration and Nationality Act, 8 U.S.C. § 1154(c) (Supp. IV 1986), as amended by the Immigration Marriage Fraud Amendments of 1986, Pub. L. No. 99-639, 100 Stat. 3537, applies to aliens who have conspired to enter into a fraudulent marriage or who have sought to obtain an immigration benefit based on a fraudulent marriage.

(2) Where the record contains evidence that a visa petition was previously filed seeking nonquota status for an alien based on a fraudulent marriage, the burden then shifts to the petitioner to prove that the alien did not seek to be accorded nonquota status based on the prior marriage. Section 204(c)(1) of the Act, 8 U.S.C. § 1154(c)(1) (Supp. IV 1986).

(3) A visa petition may be denied pursuant to section 204(c)(2) of the Act, 8 U.S.C. § 1154(c)(2) (Supp. IV 1986), where there is evidence in the record to indicate that an alien previously conspired to enter into a fraudulent marriage.

ON BEHALF OF PETITIONER:
Gordon W. Sacks, Esquire
68 Court Street
Buffalo, New York 14202

ON BEHALF OF SERVICE:
John B. Reid
General Attorney

BY: Milhollan, Chairman; Dunne, Morris, Vacca, and Heilman, Board Members

The United States citizen petitioner has applied for immediate relative status for the beneficiary as her spouse under section 201(b) of the Immigration and Nationality Act, 8 U.S.C. § 1151(b) (1982). In a decision dated November 17, 1987, the district director denied the visa petition. The petitioner has appealed from that decision and requested oral argument. The appeal will be dismissed. The request for oral argument is denied. 8 C.F.R. § 3.1(e) (1988).

The petitioner is a 21-year-old United States citizen. The beneficiary is a 24-year-old native and citizen of Lebanon. The beneficiary entered the United States as a nonimmigrant student on August 9, 1985. He married Colleen M. O'Neill, a United States citizen, on August 8, 1986. On October 27, 1986, an immediate relative visa pe-

tition, Form I-130 (Petition to Classify Status of Alien Relative for Issuance of Immigrant Visa), was filed on the beneficiary's behalf; that visa petition included the name "Colleen M. Kahi" on the signature line.

In a sworn statement made to an investigator of the Immigration and Naturalization Service on November 28, 1986, Ms. O'Neill stated that she had agreed to marry the beneficiary in exchange for $1,000 so that the beneficiary could remain in this country. Ms. O'Neill also stated in her affidavit that she had not filed a visa petition on the beneficiary's behalf, and that the signature on the visa petition filed on October 27, 1986, was not hers. Ms. O'Neill and the beneficiary were subsequently divorced on May 1, 1987.

The petitioner and the beneficiary were married on May 9, 1987. On May 26, 1987, the petitioner filed the instant petition on the beneficiary's behalf. On October 9, 1987, the district director issued a notice to the petitioner that he intended to deny the petition. The petitioner responded to this notice by letter dated October 27, 1987. On November 17, 1987, the district director issued his decision denying the visa petition pursuant to section 204(c) of the Act, 8 U.S.C. § 1154(c) (Supp. IV 1986). This appeal followed.

Section 204(c) of the Act provides:

Notwithstanding the provisions of subsection (b) no petition shall be approved if (1) the alien has previously been accorded, or has sought to be accorded, a non-quota or preference status as the spouse of a citizen of the United States or the spouse of an alien lawfully admitted for permanent residence, by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws, or (2) the Attorney General has determined that the alien has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws.

Section 204(c) of the Act was amended by the Immigration Marriage Fraud Amendments of 1986, Pub. L. No. 99-639, 100 Stat. 3537, which specified that the amended section 204(c) would be applicable "to petitions filed on or after" November 10, 1986.[1] *Id.* § 4(b), 100 Stat. 3543.

The district director based his conclusion that the beneficiary had previously entered into a marriage for the purpose of evading

---

[1] As noted above, the petitioner filed her Form I-130 on May 26, 1987. Prior to the 1986 amendment, a visa petition could not be denied under section 204(c) unless it was "established that a fraudulent marriage was entered into and that the beneficiary was issued a visa as a nonquota or preference immigrant on the basis of that marriage." *Matter of Oseguera*, 17 I&N Dec. 386, 387 (BIA 1980). The current section 204(c) is considerably broader in scope; it applies to aliens who have conspired to enter into a fraudulent marriage, or who have sought to obtain an immigration benefit based on a fraudulent marriage. *See* H.R. Rep. No. 906, 99th Cong., 2d Sess. 8, *reprinted in* 1986 U.S. Code Cong. & Ad. News 5978, 5980.

the immigration laws on the statements made by Ms. O'Neill in her affidavit. Ms. O'Neill explained that a "Jake Khoury" had introduced her to the beneficiary in June 1986. She stated that in early August 1986, "Jake" invited her to his house, and she went there and spoke with him and the beneficiary. According to Ms. O'Neill, "Jake" and the beneficiary both told her that they wanted her to marry the beneficiary so that he would not have to return to Lebanon. Ms. O'Neill was then offered $1,000 to marry the beneficiary, and she agreed to do so. "Jake" and the beneficiary told her never to tell anyone that she had received money for marrying the beneficiary.

Ms. O'Neill stated further in her affidavit that on August 8, 1986, "Jake" and the beneficiary gave the $1,000 to her at her mother's house. She was paid before the wedding ceremony, which occurred that same day. Ms. O'Neill stated that, right after the ceremony, she, the beneficiary, and "Jake" went to have photographs taken for the immigration forms that they needed to file. She said that the beneficiary paid for the photographs, which were developed while they waited. Finally, Ms. O'Neill stated that she never resided with the beneficiary at the address which was listed as their shared residence on the Form I-130.

The results of a handwriting analysis which was performed on the first visa petition filed on behalf of the beneficiary are included in the record. The forensic document analyst concludes that Ms. O'Neill did not sign the Form I-130 which was filed with the Service on October 27, 1986. The analyst also concludes that "it is highly unlikely" that the person who actually signed the form could be identified because the signature is a simulated one.

In a statement attached to her Notice of Appeal (Form I-290A), the petitioner makes the following reference to the beneficiary's marriage to Ms. O'Neill:

> The previous marriage of [the beneficiary] was not entered into in an attempt to evade the law; rather it was entered into because of a strong desire to remain in a free country at peace. He did not and does not want to return to Lebanon due to the war, which he previously fought in, and constant unrest.[a]

We find the evidence in this case to be clear and convincing that the beneficiary's marriage to Ms. O'Neill was a sham from its inception. No evidence has been submitted to rebut Ms. O'Neill's statements that she married the beneficiary so that he could

---

[2] The petitioner also states that she and the beneficiary entered into their marriage in good faith, and that they are expecting a child. Even if his current marriage is unquestionably bona fide, however, the visa petition cannot be approved if the beneficiary sought to be accorded nonquota status based on a prior fraudulent marriage.

remain in this country, that she was paid $1,000 for doing so, and that she never resided with the beneficiary after their wedding ceremony. Accordingly, we conclude that the beneficiary's marriage to Ms. O'Neill was "entered into for the purpose of evading the immigration laws."

The petitioner asserts in the brief in support of her appeal, however, that her visa petition does not fall within the scope of section 204(c)(1) of the Act because Ms. O'Neill did not file a visa petition on behalf of the beneficiary, and thus the beneficiary has not "sought to be accorded" nonquota status by virtue of a fraudulent marriage to a United States citizen. Indeed, the record reflects that Ms. O'Neill did not file a Form I-130 on the beneficiary's behalf and that the identity of the person who did file that document is not likely to be discovered. The petitioner's argument is stated succinctly in her brief: "Lacking evidence that an I-130 application had been submitted to the Immigration Service on behalf of the beneficiary by an immediate relative, there can be no finding of disqualification under section 204(c) of the . . . Act."

We reject the petitioner's argument, however, for two reasons. First, the district director concluded that the beneficiary had sought to be accorded nonquota status because the beneficiary had submitted an Application for Status as Permanent Resident (Form I-485). The record reflects that the Form I-485 was filed simultaneously with the Form I-130 that was submitted on behalf of the beneficiary on October 27, 1986. The petitioner has not denied that the beneficiary filed an Application for Status as Permanent Resident, and the district director's conclusion that the beneficiary "sought to be accorded nonquota status" on the basis of his submission of an I-485 application is therefore supported by the record.

Second, even if there were no indication in the record that the beneficiary had applied for status as a permanent resident, we would not require the Service to prove that the beneficiary's previous spouse was the person who filed the fraudulent Form I-130 in order for section 204(c)(1) to become applicable. The statute itself does not mention actions taken by United States citizen or lawful permanent resident spouses but instead focuses on aliens who have previously sought to be accorded nonquota or preference status by reason of a fraudulent marriage. We therefore find that a requirement that the Service establish that a United States citizen spouse actually filed the Form I-130 is too demanding a test for section 204(c)(1) purposes. We further conclude that where there is evidence in the record to indicate that the beneficiary has been an active participant in a marriage fraud conspiracy, the burden shifts

to the petitioner to establish that the beneficiary did not seek non-quota or preference status based on a prior fraudulent marriage.

The record in this case reflects that a visa petition was filed on behalf of the beneficiary seeking nonquota status for him as the spouse of a United States citizen. Although the visa petition was not filed by Ms. O'Neill, the beneficiary's prior spouse, the petitioner has submitted no evidence to establish that the visa petition was filed without the knowledge or approval of the beneficiary. Absent such evidence, we find that the petitioner has failed to rebut the charge that the beneficiary previously sought to be accorded nonquota status based on a marriage entered into for the purpose of evading the immigration laws, and we find that the instant visa petition was properly denied pursuant to section 204(c)(1) of the Act.[3]

Because we find no error in the district director's decision denying the visa petition in accordance with section 204(c) of the Act, as amended, the petitioner's appeal will be dismissed.

ORDER: The appeal is dismissed.

---

[3] While the district director's decision appears to be grounded in section 204(c)(1) of the Act, this visa petition could have alternatively been denied under section 204(c)(2). According to the evidence in the record, the beneficiary, Ms. O'Neill, and "Jake" agreed at a meeting in early August 1986 that Ms. O'Neill would marry the beneficiary in exchange for $1,000, so that the beneficiary would not have to return to Lebanon. When the beneficiary and Ms. O'Neill reached this agreement prior to their marriage, the beneficiary had at that point "attempted or conspired to enter into a marriage for the purpose of evading the immigration laws." During the pendency of this appeal, the Service has promulgated regulations which support the foregoing interpretation of section 204(c)(2):

Section 204(c) of the Act prohibits the approval of a visa petition filed on behalf of an alien who has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws. The director shall deny any immigrant visa petition for immigrant visa classification filed on behalf of such alien, regardless of whether that alien received a benefit through the attempt or conspiracy. Although it is not necessary that the alien have been convicted of, or even prosecuted for, the attempt or conspiracy, the evidence of such attempt or conspiracy must be documented in the alien's file.

53 Fed. Reg. 30,016 (1988) (to be codified at 8 C.F.R. § 204.1(a)(2)(iv)). The evidence of an "attempt or conspiracy" is included in the record file in this case—specifically, Ms. O'Neill's testimony that she agreed to enter into a fraudulent marriage with the beneficiary at a meeting with the beneficiary and "Jake" in early August 1986.

MATTER OF C–

*In Adjustment of Status Proceedings*
*Designated by Commissioner November 15, 1988*

(1) A reason which "comes unexpectedly into being" is an "emergent reason" for the
purpose of determining continuous residence under 8 C.F.R. § 245a.1(c)(1)(i) (1988).
(2) Notwithstanding an absence from the United States of 58 days, the applicant
maintained continuous residence because she intended to return after 30 days,
and her return was unexpectedly delayed by the failure of the postal service to
timely deliver a letter containing the necessary travel funds.

ON BEHALF OF APPLICANT: Pro se

This case is before the Legalization Appeals Unit ("LAU") for the
second time. The first time the case was certified to the LAU by
the director, Western Regional Processing Facility ("WRPF"). The
LAU remanded the case to the WRPF to determine whether the
applicant's absence from the United States for more than 45 days
was due to "emergent reasons." The WRPF concluded that the ab-
sence was not due to an emergent reason and denied the applica-
tion. The applicant timely filed this appeal. The appeal will be sus-
tained.

The applicant is a 23-year-old native and citizen of Mexico. She is
married to a 29-year-old native and citizen of Mexico. The couple
has three children, all of them United States citizens. The appli-
cant's husband has been granted temporary resident status under
section 245A of the Immigration and Nationality Act, 8 U.S.C.
§ 1255a (Supp. IV 1986).

On May 19, 1987, the applicant filed an Application for Status as
a Temporary Resident (Form I-687) under section 245A of the Act.
In her application, she stated that she entered the United States
without inspection on April 16, 1980. Between January 1, 1982, and
May 19, 1987, the applicant stated that she only had one trip out-
side the United States. The trip was from "4-84" to "6-84." It ap-
pears, however, that upon examination at the legalization office, an
Immigration and Naturalization Service examiner entered the
exact dates of the trip. The examiner found that the applicant left
the United States on April 16, 1984, and returned on June 13, 1984.
Thus, the length of her absence from the United States was for 58
days.

The immigration examiner at the legalization office, after interviewing the applicant, recommended to the director of the WRPF that the application for temporary residence be granted. On August 4, 1987, the director of the WRPF denied the application on the ground that the applicant's absence from the United States had "exceeded the maximum allowable time for a single absence." The director further noted that there was "no evidence in the record to establish that [the applicant's] departure from the United States . . . was of an emergent reason." The director, however, certified his decision to the LAU.

On October 15, 1987, the LAU remanded the case to the director, WRPF, to determine whether the applicant's absence from the United States of more than 45 days was due to "emergent reasons." The LAU noted the fact that the examiner at the legalization office had recommended the application be approved. However, the examiner did not explain the basis for the recommendation and whether he elicited information which tended to prove the applicant's absence was due to emergent reasons. The LAU asked the director, WRPF, to reinterview the applicant in more detail to determine "the nature of her visit and whether her inability to return within forty-five days was due to emergent reasons." It was also noted that the applicant left from and returned to the same address in the United States.

On November 27, 1987, the director, WRPF, issued a decision denying the application. The director stated inter alia:

> Your absence from the United States from April 16, 1984 until June 13, 1984 exceeded the maximum allowable time for a single absence. When contacted telephonically on October 23, 1987, you claimed that you could not return to the United States prior to June 13, 1984 because you did not have the necessary money to pay for your return trip. You stated that your husband sent the money to you, but because the ranch you were staying at was in such a remote location, it took a long time for you to receive it. The fact that you did not have sufficient funds for your return trip does not qualify as an emergent reason for your failure to return to the United States within the time limit allowed.

The applicant timely filed a notice of appeal.

Section 245A(a) of the Act sets forth the statutory requirements for eligibility for temporary resident status. Among those is the requirement that the applicant must prove continuous unlawful residence in the United States before January 1, 1982, and through the date the application is filed. Section 245A(a)(2) of the Act. The regulations implementing this provision state, inter alia, that the continuous residence requirement is met when

> [n]o single absence from the United States has exceeded forty-five (45) days, and the aggregate of all absences has not exceeded one hundred and eighty (180) days between January 1, 1982 through the date the application for temporary resident

*status is filed, unless the alien can establish that due to emergent reasons, his or her return to the United States could not be accomplished within the time period allowed.*

8 C.F.R. § 245a.1(c)(1)(i) (1988) (emphasis added).

Thus, we must determine here whether the applicant's absence of 58 days, 13 days more than permitted by the regulations, was because of an "emergent reason." This term is not defined in the regulations. In seeking to interpret and apply this term we are mindful of congressional intent "that the legalization program should be implemented in a liberal and generous fashion, as has been the historical pattern with other forms of administrative relief granted by Congress." H.R. Rep. No. 682(I), 99th Cong., 2d Sess. 72, *reprinted in* 1986 U.S. Code Cong. & Admin. News 5649, 5676. Congress also expected "INS to incorporate flexibility into the standards for legalization eligibility." *Id.* at 73.

The Immigration and Naturalization Service has adopted the definition found in *Webster's II New Riverside University Dictionary* where the word "emergent" is defined as "coming unexpectedly into being." [1] The application of this definition requires us to examine on a case-by-case basis the reasons why an applicant remained abroad longer than the prescribed period. The record in this case indicates that when the applicant was reinterviewed to explain her absence, she stated she only intended to stay in Mexico for 30 days. However, because she was staying on a ranch distant from a town, a letter from her husband enclosing money for her return trip to the United States was delayed. The Service examiner who reinterviewed her noted in the record that the applicant "has the letter from her husband showing when he mailed it and how long it took to get to her."

The credibility of the applicant has not been questioned. Based on the record before us, we must conclude that she planned to stay in Mexico for 30 days, but the unexpected delay in receiving the money from her husband caused her to be absent from the United States for 58 days. In summary, her inability to return within the time allowed was because of an emergent reason.

ORDER: The appeal is sustained. The application is approved.

---

[1] Subsequent to the issuance of this decision but prior to its designation as a precedent, the court in *Hernandez v. Meese*, No. CIV-S-88-385 (E.D. Cal. Aug. 11, 1988), cited with approval the Service definition of "emergent reason," stating that "the standard enunciated by the Legalization Appeals Unit appears to be generous and in keeping with the Congressional directive to administer the program in a liberal and generous fashion."