# Matter of Jongbum PAK, Beneficiary of a visa petition filed by Jacklyn Hyonk Lee, Petitioner

*Decided October 30, 2020*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

Where there is substantial and probative evidence that a beneficiary's prior marriage was fraudulent and entered into for the purpose of evading the immigration laws, a subsequent visa petition filed on the beneficiary's behalf is properly denied pursuant to section 204(c) of the Immigration and Nationality Act, 8 U.S.C. § 1154(c) (2018), even if the first visa petition was denied because of insufficient evidence of a bona fide marital relationship.

FOR PETITIONER: Samuel William Asbury, Esquire, Fairview, Oregon

FOR THE DEPARTMENT OF HOMELAND SECURITY: Margaret A. Rosenast, Associate Counsel

BEFORE: Board Panel: GREER, O'CONNOR, and WILSON, Board Members.

WILSON, Board Member:

In a decision dated May 1, 2018, the Field Office Director ("Director") denied the Petition for Alien Relative (Form I-130) filed by the United States citizen petitioner on behalf of the beneficiary to accord him immediate relative status as her husband pursuant to section 201(b)(2)(A)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1151(b)(2)(A)(i) (2018). The petitioner has appealed from that decision, arguing that the Director erred in finding that approval of the visa petition is barred by section 204(c) of the Act, 8 U.S.C. § 1154(c) (2018), on the ground that the beneficiary's prior marriage was fraudulent and entered into for immigration purposes, because the visa petition filed on his behalf by his first wife was denied for "insufficient evidence of a bona fide marital relationship." The appeal will be dismissed.

## I. FACTUAL AND PROCEDURAL HISTORY

### A. Beneficiary's First Marriage

On December 30, 2011, the beneficiary's former wife, a United States citizen, filed a visa petition on his behalf. In a Notice of Intent to Deny issued

on October 4, 2012, the Director identified discrepancies in the answers given by the beneficiary and his first wife regarding their courtship, marriage, and family members during their visa interview on July 2, 2012. He also concluded that the petitioner had provided insufficient documentary evidence to establish a good faith marriage. Most significantly, the Director indicated that a September 21, 2012, site visit by officials of the United States Citizenship and Immigration Services ("USCIS") revealed that the beneficiary's first wife did not reside with him at the claimed marital address in Portland, Oregon, and that they had given significantly inconsistent details about their living arrangements and life together.

More specifically, the beneficiary's former wife was not present at the residence during the site visit, and a visual inspection of the premises indicated there were no items belonging to a female. The beneficiary told the officers that she was working in Salem, Oregon, as a babysitter for her cousin. The beneficiary also claimed that he worked on weekdays as a janitor from 10:00 p.m. to 4:00 a.m. at his father's grocery store.[1]

After leaving the shared residence, the USCIS officers contacted the beneficiary's wife by telephone. When asked why she resided in Salem, she stated that her family lived there and she only stayed there on weekends. She further indicated that she was in the process of moving her possessions from Salem to the Portland marital address, despite the fact that she had claimed on the Form G-325A (Biographic Information) to have been living at the marital residence since December 2011. She also indicated that she was employed as a cashier at a grocery store owned by the beneficiary's father, not as a babysitter in Salem.

In a decision entered on November 8, 2012, the Director found the former wife's responses insufficient to resolve the issues raised in the Notice of Intent to Deny, and he denied the visa petition, concluding that she had not demonstrated that her marriage to the beneficiary was bona fide. The beneficiary and his first wife were divorced on June 13, 2013.

## B. Beneficiary's Current Marriage

The petitioner and the beneficiary married on September 9, 2014, and she filed a visa petition on his behalf on December 6, 2016. The couple appeared

---

[1] The beneficiary told the officers that he drove his wife to work each weekday morning and returned to his residence, and that in the evening he picked her up in Salem and they would both return home. The beneficiary also stated that he paid $690 per month to rent an apartment in Salem, where his wife stayed when she was working as a babysitter. When the officer inquired why she would need an apartment in Salem if she just worked there on a daily basis, the beneficiary changed his answer and stated that she resided in Salem on the weekends.

for an interview in connection with the visa petition on June 26, 2017, during which the beneficiary was asked about the specific concerns relating to his prior marriage. The next day, the Director issued a request for evidence to show that the beneficiary's first marriage was valid and was not entered into for immigration purposes.

In response, the petitioner submitted a letter stating that she and the beneficiary were friends during the time he and his first wife were married, that she saw him wearing a wedding ring, and that he once introduced her to his then-wife at a restaurant. She further claimed that after the beneficiary and his first wife divorced and she began to date him, she deleted records and pictures of the former couple from the beneficiary's cell phone and computer out of jealousy. The petitioner also presented a letter in which the beneficiary described his relationship with his first wife and stated that he had not taken the process of applying for lawful permanent residence seriously while he was with her. Finally, the petitioner provided a letter from the pastor who officiated at the beneficiary's first wedding. The pastor said that the wedding involved a simple ceremony because of financial considerations and that he had later observed the couple living as husband and wife when visiting them.

The Director thereafter issued a Notice of Intent to Deny, in which he called attention to the issues raised during the pendency of the first wife's visa petition. In addition, he noted that the answers the beneficiary gave to questions about his prior marriage during the interview with the petitioner were inconsistent and lacking in detail. The Director also stated that approval of the visa petition appeared to be barred under section 204(c) of the Act.

To explain why the beneficiary was unable to provide consistent testimony or respond to certain questions about his first marriage, the petitioner submitted a psychological report, in which a clinical psychologist determined that the beneficiary has significant memory problems as a result of a traumatic brain injury he suffered when he was 5 years old. Finding the petitioner's response inadequate, the Director determined that although the beneficiary's current marriage to the petitioner is bona fide, approval of the visa petition is barred under section 204(c) of the Act because the record contains substantial and probative evidence that the beneficiary's former marriage was fraudulent.

## II. ANALYSIS

The petitioner argues that the Director's section 204(c) ruling is improper. She points out that, although the visa petition filed by the beneficiary's first wife was denied because of insufficient evidence of a bona fide marital relationship, there was no finding of a fraudulent marriage. In response, the Department of Homeland Security argues that the Director properly reviewed

the entire record in determining that the petitioner has not met her burden of proof under *Matter of Tawfik*, 20 I&N Dec. 166, 167–68 (BIA 1990) (requiring that, before applying the section 204(c) bar, a District Director must make an independent judgment, based on evidence in the file, that an alien's prior marriage was fraudulent).  As with all questions arising in appeals from decisions of USCIS officers, we review this question de novo. *See* 8 C.F.R. § 1003.1(d)(3)(iii) (2020).

We begin our analysis with the language of the governing statute and regulations.  Section 204(c) of the Act provides:

> Notwithstanding the provisions of subsection (b) no petition shall be approved if (1) the alien has previously been accorded, or has sought to be accorded, an immediate relative or preference status as the spouse of a citizen of the United States or the spouse of an alien lawfully admitted for permanent residence, by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws, or (2) the Attorney General has determined that the alien has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws.[2]

The regulation at 8 C.F.R. § 204.2(a)(1)(ii) states:

> Section 204(c) of the Act prohibits the approval of a visa petition filed on behalf of an alien who has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws.  The director will deny a petition for immigrant visa classification filed on behalf of any alien for whom there is substantial and probative evidence of such an attempt or conspiracy, regardless of whether that alien received a benefit through the attempt or conspiracy.  Although it is not necessary that the alien have been convicted of, or even prosecuted for, the attempt or conspiracy, the evidence of the attempt or conspiracy must be contained in the alien's file.

The plain language of the statute and the regulation does not foreclose the application of the section 204(c) bar in cases where the prior visa petition filed on the beneficiary's behalf was denied based on failure to establish a bona fide marital relationship, but the marriage had not been determined to

---

[2]   Pursuant to section 1517 of the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135, 2311 (codified at 6 U.S.C. § 557 (2018)), any reference to the Attorney General in a provision of the Act describing functions that were transferred from the Attorney General or other Department of Justice official to the Department of Homeland Security "shall be deemed to refer to the Secretary" of Homeland Security.  *See also* 6 U.S.C. § 542 note (2018); 8 U.S.C. § 1551 note (2018).  The Secretary of Homeland Security has delegated that authority to Field Office Directors.  8 C.F.R. § 100.1 (2020).

be fraudulent.[3] *See Matter of R.I. Ortega*, 28 I&N Dec. 9, 12 (BIA 2020) (stating that "[u]nder settled rules of statutory construction, we look first to the plain meaning of the language"). Instead, the broad phrasing and the absence of a temporal requirement suggest that section 204(c) may be applied based on a marriage fraud finding whenever it becomes evident that there is substantial and probative evidence of an attempt or conspiracy to enter into a marriage for the purpose of evading the immigration laws.

Our prior precedent further supports this interpretation. In *Matter of Kahy*, 19 I&N Dec. 803, 804–05 (BIA 1988), we considered whether the District Director properly denied a subsequent visa petition under section 204(c) of the Act where the beneficiary's ex-wife had indicated in a sworn statement that she agreed to marry him for $1,000 so he could remain in the United States, but she never actually sought an immigration benefit based on the fraudulent marriage because an unidentified person had forged her signature on the visa petition. Even though the beneficiary had not pursued an immigration benefit, we held that "where there is evidence in the record to indicate that the beneficiary has been an active participant in a marriage fraud conspiracy, the burden shifts to the petitioner to establish that the beneficiary did not seek nonquota or preference status based on a prior fraudulent marriage." *Id.* at 806–07. Since the petitioner did not rebut the charge, we affirmed the denial of the visa petition.

We similarly addressed the breadth of section 204(c) of the Act and the absence of a specific timeline for its imposition in *Matter of Tawfik*, 20 I&N Dec. at 168–69. In that case, the District Director revoked approval of the petitioner's subsequent visa petition on the ground that the beneficiary had previously attempted to be accorded immediate relative status as the spouse of a United States citizen by reason of a fraudulent marriage. *Id.* at 166–67. In reviewing this determination, we stated that "[n]either section 204(c) of the Act nor the regulations specify . . . at what point" the determination of whether an alien has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws may be made. *Id.* at 168.

We also concluded that the Director "should not give conclusive effect to determinations made in a prior proceeding, but, rather, should reach his own independent conclusion based on the evidence before him." *Id.* In that regard, we held that the approvability of the subsequent visa petition "will depend on a determination of whether there is, at present, sufficient evidence, inclusive of evidence relied upon in the determination of the first visa petition, to support the contention that the beneficiary's previous marriage to a United States citizen was entered into for purposes of evading

---

[3] Section 204(c) of the Act also does not bar the approval of a successive visa petition filed by the same petitioner on behalf of a beneficiary spouse. *Matter of Isber*, 20 I&N Dec. 676, 678–79 (BIA 1993).

the immigration laws." *Id.* at 168–69. Applying these standards, we found that the record lacked sufficient documentation to support the District Director's conclusion that the beneficiary had entered into a fraudulent marriage, and we reversed the revocation of the visa petition. *Id.* at 169–70.

The petitioner also contests the propriety of the Director's finding that the beneficiary's prior marriage was fraudulent. Evidence of a fraudulent marriage "must be documented in the alien's file and must be substantial and probative." *Id.* at 167. "[T]he degree of proof required for a finding of marriage fraud sufficient to support the denial of a visa petition under section 204(c) of the Act [is] higher than a preponderance of the evidence and closer to clear and convincing evidence." *Matter of P. Singh*, 27 I&N Dec. 598, 607 (BIA 2019). Thus, "to be 'substantial and probative,' the evidence must establish that it is more than probably true that the marriage is fraudulent." *Id.* "The application of the 'substantial and probative evidence' standard requires the examination of all of the relevant evidence and a determination as to whether such evidence, when viewed in its totality, establishes, with sufficient probability, that the marriage is fraudulent." *Id.*

In response to the Notice of Intent to Deny, the petitioner submitted a psychological report in support of her assertion that the beneficiary has memory problems, which she claims explain the discrepancies in his answers about his prior marriage. The Director provided reasons for discounting the psychological report. However, even crediting this evidence, the Director identified conduct of the couple after the marriage that, unrelated to any memory issues, indicates their subjective state of mind when they married. In particular, he concluded that the Summary of Findings detailing the September 21, 2012, site visit to the claimed marital residence establishes fraud. *See id.* at 609 ("Detailed reports from on-site visits and field investigations are especially important pieces of evidence that may reveal the presence of fraud.").

The Summary of Findings describes significant discrepancies in the accounts given by the beneficiary and his first wife regarding (1) whether and for how long the couple lived at the claimed marital residence; (2) their places and type of employment (and whether they, in fact, worked at the same store owned by the beneficiary's father); and (3) the former wife's living arrangements in Salem and the reasons why the beneficiary paid rent for her apartment there. Additionally, the record contains documentation of contradictions that arose during the beneficiary's two visa interviews regarding how, when, and where he met his first wife, as well as how their relationship progressed to marriage.

The petitioner submitted no new documentary evidence showing a joint life between the beneficiary and his first wife, apart from affidavits from the petitioner, the beneficiary, and the pastor who conducted the beneficiary's

first wedding ceremony. Affidavits of this nature, alone, "will generally not be sufficient to overcome evidence of marriage fraud in the record without objective documentary evidence to corroborate the assertions made by the affiants." *Id.*

The Director correctly conducted an independent determination based on the facts available when the petitioner filed the current visa petition. *See Matter of Tawfik*, 20 I&N Dec. at 168–69. In doing so, the Director permissibly relied on "relevant evidence, including evidence having its origin in prior [visa petition] proceedings involving the beneficiary." *Id.* at 168. We conclude that the Director properly conducted an independent analysis of section 204(c)'s applicability in adjudicating the petitioner's visa petition. In so doing, he did not erroneously equate the beneficiary's first wife's failure to prove the bona fides of their marriage with the beneficiary's intent in entering into that marriage.

## III.  CONCLUSION

The fact that the visa petition filed by the beneficiary's first wife was denied for failure to establish a bona fide marriage does not preclude the Director from denying the petitioner's visa petition under section 204(c) of the Act. Moreover, having reviewed all the relevant evidence in its totality, we uphold the Director's finding that there is substantial and probative evidence in the record that the beneficiary's prior marriage was fraudulent and entered into for the purpose of evading the immigration laws. *See Matter of P. Singh*, 27 I&N Dec. at 607; *Matter of Tawfik*, 20 I&N Dec. at 167. We further conclude that the petitioner did not rebut this evidence when given the opportunity to do so. We therefore affirm the denial of the petitioner's visa petition pursuant to section 204(c) of the Act. Accordingly, the petitioner's appeal will be dismissed.

**ORDER:** The appeal is dismissed.