**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 20-2608

JUANITA MUKUI; STANLEY MUKUI
Appellants

v.

DIRECTOR UNITED STATES CITIZENSHIP AND IMMIGRATION
SERVICES PHILADELPHIA DISTRICT; DIRECTOR UNITED STATES
CITIZENSHIP AND IMMIGRATION SERVICES; SECRETARY UNITED STATES
DEPARTMENT OF HOMELAND SECURITY; THE ATTORNEY GENERAL OF
THE UNITED STATES OF AMERICA

On Appeal from the
United States District Court for the Eastern District of Pennsylvania
(No: 19-cv-03249)
The Honorable John M. Younge

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
March 18, 2021

Before: SHWARTZ, MATEY, *Circuit Judges*, and TRAXLER[*], *Senior Judge*

(Opinion filed:  March 23, 2021)

OPINION[**]

---

[*] Honorable William B. Traxler, Jr., Senior Judge, United States Court of Appeals for the Fourth Circuit, sitting by designation.
[**] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

MATEY, *Circuit Judge.*

Stanley Mukui ("Mukui") sought legal permanent residence in the United States. But Mukui had a previous marriage, one the BIA concluded was a sham. Mukui, and his wife Juanita, argue that BIA's decision was arbitrary and capricious, but it was not. So we will affirm.

## I. BACKGROUND

Mukui entered the United States in 2005 on a student visa. The year after, he married Kyeisha McNeill. In April 2007, McNeill filed a Form I-130,[1] Petition for Alien Relative on Mukui's behalf. But shortly after, McNeill withdrew the application, and her support, in a written statement saying Mukui paid her to marry just two days after they first met ("2007 Withdrawal Statement").[2] Mukui and McNeill divorced in December 2007.

Mukui quickly remarried Juanita, a United States citizen. In 2013, Mrs. Mukui filed an I-130 petition on her husband's behalf. But the Immigration and Nationality Act ("INA") bars an I-130 petition if there is "substantial and probative evidence" that the alien beneficiary has ever attempted, conspired, or entered into a marriage "for the purpose of evading the immigration laws." INA § 204(c), 8 U.S.C. § 1154(c); 8 C.F.R. § 204.2(a)(1)(ii). As a result, United States Citizen and Immigration Services ("USCIS") notified Mrs. Mukui it intended to deny her petition, citing the 2007 Withdrawal Statement

---

[1] Under the Immigration and Nationality Act, a United States citizen may file an I-130 petition to have his or her spouse classified as an "immediate relative" of a citizen, which enables the spouse to obtain lawful permanent resident status. 8 U.S.C. §§ 1151(b)(2)(A)(i), 1154(a)–(b).

[2] Her statement also explained the couple never lived together or consummated their marriage. It was also signed by McNeill's lawyer.

as evidence of Mukui's prior fraudulent marriage to McNeill. *See* 8 C.F.R. § 103.2(b)(8)(iv). The USCIS gave Mrs. Mukui a chance to rebut or refute that conclusion. *See id.* § 103.2(b)(16)(i). Mrs. Mukui responded with documentary evidence and affidavits, including three from McNeill recanting the 2007 Withdrawal Statement. Unpersuaded, the USCIS denied the I-130 petition.

The BIA affirmed that conclusion. The BIA found that the 2007 Withdrawal Statement constituted "substantial and probative evidence" that the Mukui-McNeill marriage was fraudulent, and, in the process, rejected the rebuttal evidence, including McNeill's new statements. *See* 8 C.F.R. § 204.2(a)(1)(ii). (App. at 121–23.) The Mukuis challenged that decision, and the District Court granted summary judgment for the BIA. The Mukuis timely appealed and we will affirm.[3]

## II. STANDARD OF REVIEW

Our review of the BIA's final decision focuses on whether the agency action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law[.]" 5 U.S.C. § 706(2)(A). Under this highly deferential standard, we may not "substitute [our] judgment for that of the agency." *CBS Corp. v. F.C.C.*, 663 F.3d 122, 137 (3d Cir. 2011) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). So we must uphold the BIA's decision as long as it reached "a rational" conclusion. *State Farm*, 463 U.S. at 43 (citation omitted).

---

[3] The District Court had subject-matter jurisdiction under 28 U.S.C. § 1331, and we have jurisdiction over the final order of the District Court under 28 U.S.C. § 1291.

III. DISCUSSION

**A.     The BIA's Burden-Shifting Framework**

To establish eligibility for an I-130 Petition, the applicant bears the initial burden to prove a legitimate, good-faith marriage by a preponderance of the evidence. *Matter of Singh*, 27 I. & N. Dec. 598, 605 (B.I.A. 2019); 8 C.F.R. § 103.2(b)(1); 8 U.S.C. § 1361. The USCIS then investigates, 8 U.S.C. § 1154(b), 8 C.F.R. § 204.2, and must deny the petition if there is "substantial and probative evidence" that the alien has ever attempted, conspired, or entered into a marriage "for the purpose of evading the immigration laws." 8 U.S.C. § 1154(c); 8 C.F.R. § 204.2(a)(1)(ii). If the USCIS uncovers evidence of fraud, it notifies the applicant, 8 C.F.R. § 103.2(b)(8)(iv), who has the chance to respond. *Id.*; *see also id.* § 103.2(b)(16)(i). At that stage, the burden shifts to the applicant who must prove, by a preponderance of the evidence, that the challenged marriage was legitimate. *Matter of Singh*, 27 I. & N. Dec. at 605; *Matter of Kahy*, 19 I. & N. Dec. 803, 806–07 (B.I.A. 1988) ("[W]here there is evidence in the record to indicate that the beneficiary has been an active participant in a marriage fraud conspiracy, the burden shifts to the petitioner to establish that the beneficiary did not seek nonquota or preference status based on a prior fraudulent marriage."). When evaluating the authenticity of a marriage, the "central question" is whether the parties "intended to establish a life together at the time they were married." *Matter of Laureano*, 19 I. & N. Dec. 1, 2–3 (B.I.A. 1983).

**B.     The BIA Applied the Correct Legal Standards**

The Mukuis argue that the BIA erred in two ways. First, the BIA did not apply the heightened "substantial and probative" evidentiary burden in finding fraud, and second,

4

that the BIA did not apply the bona fide marriage test properly. Both arguments are unavailing.

**1.** The Mukuis claim that although the BIA gave "lip service" to the "substantial and probative" evidence requirement, the BIA did not apply it. (Opening Br. at 23.) They note that the BIA's decision predates *Matter of Singh*, which clarified that "substantial and probative evidence" is more than a preponderance, but less than clear and convincing. 27 I. & N. at 607.

We disagree. The BIA repeatedly stated the correct "substantial and probative" burden, citing the then-leading case on the matter, *Matter of Tawfik*, 20 I. & N. Dec. 166, 168 (B.I.A. 1990) (describing the "substantial and probative" burden as requiring more than a "reasonable inference" of fraud). (App. at 121.) *Matter of Singh* did not change that definition. Rather, it merely clarified the meaning of "substantial and probative" without disturbing "the standard we currently employ." 27 I. & N. at 607. Properly framed, the Mukuis' argument simply contests whether the evidence of fraud cleared the "substantial and probative" bar. The BIA determined that it did, and we cannot substitute our judgment for the agency's. *CBS Corp.*, 663 F.3d at 137.

**2.** Similarly, the BIA did not misapply *Matter of Laureano* in determining the legitimacy of Mukui's marriage to McNeill. 19 I. & N. Dec. at 2–3. The BIA assessed the rebuttal evidence and concluded it did not prove the "bona fide nature of the relationship." (App. at 123.) And there is no merit to the Mukuis' contention that the BIA ignored portions of McNeill's affidavits about her relationship with Mukui. As the District Court observed, the BIA weighed McNeill's affidavits to assess the substantial and probative value of her

2007 Withdrawal Statement and determined the latter was more reliable than the former. The BIA did not have to reiterate this credibility determination a second time, and we see no error in the BIA's application of the relevant legal standards.

## C. The BIA's Decision was Not Arbitrary and Capricious

Likewise, the BIA's conclusion that the 2007 Withdrawal Statement constituted "substantial and probative evidence" of marriage fraud was not arbitrary and capricious. As explained in *Matter of Singh*, a "sworn statement by the parties admitting that the marriage is fraudulent, that money changed hands, and that the couple did not intend to live together or consummate the marriage is direct evidence of fraud that is 'substantial and probative.'" 27 I. & N. at 607. That aptly describes the 2007 Withdrawal Statement.[4]

The Mukuis assign error to the BIA's decision to credit the 2007 Withdrawal Statement over other evidence, including McNeill's later affidavits. *See id.* (noting that the substantial and probative evidence standard requires examination of "all of the relevant evidence" in its "totality"). But as noted, the BIA did consider all evidence the Mukuis submitted, finding it "[in]sufficient" to "overcome the Director's" finding of substantial and probative evidence of marriage fraud. (App. at 123.) The BIA also properly confirmed the substantial and probative value of the 2007 Withdrawal Statement by assessing whether it was knowing and voluntary, given McNeill's rebuttal affidavits suggesting it was not.

---

[4] The Mukuis point out the 2007 Withdrawal Statement was unsworn. But as the BIA found, there is plenty in the record to support its veracity: the handwritten detailed statement was unnecessary to withdraw the I-130 application, and McNeill made it in the presence of her attorney who also signed it.

We see no error in the BIA's engagement with the evidence resulting in its conclusion there was substantial and probative evidence of fraud.

Nor was it arbitrary and capricious for the BIA to conclude the rebuttal evidence failed to establish the good faith of the Mukui-McNeill union. The BIA found that the affidavits, including from friends and family members, were "too general" and lacked "sufficient insight into the bona fide nature of the relationship." (App. at 123.) The affidavits show that Mukui and McNeill socialized and that Mukui visited McNeill's family, but it was not implausible for the BIA to conclude they fail to show the bona fide "nature of the relationship." (App. at 123.) Like the BIA, we considered the affidavits and also conclude that they are brief, conclusory, and lack details.[5] Because the affidavits did not provide specific evidence of a genuine relationship, the BIA concluded the documentary evidence showing a shared address did not move the needle in the Mukuis' favor.[6] These were not "implausible" conclusions to draw from the evidence. *NVE, Inc. v. Dep't of Health & Human Servs.*, 436 F.3d 182, 190 (3d Cir. 2006).

For those reasons, we see no error in the District Court's decision that the BIA fully considered all of the evidence and rationally concluded it warranted rejecting the I-130 application.

---

[5] It is telling that most of the affidavits only mentioned the pair's married life and provided little to no insight into the couple's alleged courtship.

[6] While evidence that Mukui and McNeill shared bank accounts, credit cards, health insurance, and a life insurance policy naming McNeill the beneficiary may indicate more than just a shared address, it was not irrational for the BIA to view this supporting documentation and the entangling of Mukui's and McNeill's finances during their short-lived marriage as part of the overall fraudulent marriage scheme.

## IV. CONCLUSION

We will affirm the District Court's grant of summary judgment for Defendants.