NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0230n.06

No. 20-3460

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
May 03, 2021
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| SAIYDAH WEEMS SHOLANKE, et al., ) | |
| ) | |
| Plaintiffs-Appellants, ) | |
| ) | |
| v. ) | ON APPEAL FROM THE UNITED STATES |
| ) | DISTRICT COURT FOR THE NORTHERN |
| ) | DISTRICT OF OHIO |
| UNITED STATES CITIZENSHIP AND ) | |
| IMMIGRATION SERVICES, et al., ) | |
| ) | OPINION |
| Defendants-Appellees. ) | |
| ) | |

BEFORE: STRANCH, LARSEN, and NALBANDIAN, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.** Saiydah Weems Sholanke and Abdulafeez Sholanke (Sholanke) appeal the district court's grant of judgment as a matter of law to the United States Citizenship and Immigration Services (USCIS) for its denial of immigration benefits to Abdulafeez Sholanke. Sholanke had previously married Christina Yoder, who had similarly filed for immigration benefits on his behalf. USCIS determined that Sholanke's marriage to Yoder was fraudulent, and then denied Weems Sholanke's petition based on the permanent bar in 8 U.S.C. § 1154(c) (INA § 204(c)). The Board of Immigration Appeals (BIA) affirmed. The Sholankes filed suit in district court, claiming that the BIA's decision violated the Administrative Procedure Act (APA). The district court found for USCIS. The Sholankes now argue that the panel should reverse the district court and find that the BIA and USCIS acted arbitrarily and capriciously. We **AFFIRM**.

## I. BACKGROUND

Abdulafeez Sholanke is a citizen of Nigeria. In Nigeria, he married a woman named Surat Jimoh. In August 2013, the two divorced, after about a year and a half of marriage, and Sholanke was admitted to the United States on an F-1 nonimmigrant student visa.

On September 5, 2014, Sholanke married Christina Yoder, a United States citizen. Yoder filed an I-130, a Petition for Alien Relative, for Sholanke on October 17, 2014, and at the same time, Sholanke filed an I-485, for adjustment of status. With their I-130, the couple submitted evidence that the marriage was bona fide, including photographs of the couple together, a lease document signed by the landlord but not Yoder or Sholanke, Sholanke and Jimoh's divorce decree, a joint utility bill, their marriage certificate, the affidavits of witnesses to the ceremony, and an affidavit from Yoder's father in support of Sholanke's petition.

USCIS interviewed Yoder and Sholanke separately on January 13, 2015. At the interview, Yoder stated that she and Sholanke discussed marriage starting in February 2014, but Sholanke said those conversations did not occur until July 2014. The couple was inconsistent about who attended their marriage ceremony. Yoder could not recall Sholanke's father's name. The couple did not provide the same answer as to how many of Yoder's brothers Sholanke had met; Sholanke said one, and Yoder said four.

On May 14, 2015, USCIS conducted a home visit at the address on the lease Yoder and Sholanke had listed and found Sholanke. He stated that Yoder was not there because she had gone to work. Officers claim Sholanke said that he and Yoder had first met at a Burger King, rather than online as he had stated in his prior interview. (*Id.*) The only personal items of Yoder's in the apartment were a contact lens case and solution, a red article of clothing that Sholanke characterized as a bathrobe, a black undergarment, a pair of slippers, and a pair of broken flip-flops. Sholanke claimed that Yoder took their laundry to work, where she could do it for free at

the nursing home where she worked. He was unclear about the length of a trip Yoder had recently taken. He knew Yoder's father's name, but not her mother's, and he misidentified her mother's birthday.

The officers traveled to Yoder's parents' home and spoke to Yoder's father, who stated that he and his wife had been against the marriage because they thought Sholanke only wanted a green card, but that he had written his affidavit for the application in support of his daughter. He said he did not know why Yoder and Sholanke did not live together.

When the officers interviewed Yoder at her parents' home, she said that she did not own anything like the black undergarment they described. She indicated that the red garment was her wedding dress, not a bathrobe. She also stated she took only her own laundry, and she did it at her parents' home where she lived, not where she worked. Yoder said that she knew they had already spoken to Sholanke, and that he told her he had just woken up and was not thinking clearly when he was interviewed. She stated that they had met online, that she wanted to live with him, but he did not want to live close to where she worked, so she lived at her parents' most of the time. Yoder said that on occasion she wanted to visit Sholanke but he told her not to come. Based on these interviews, USCIS officers concluded that the marriage was not bona fide: they determined that Yoder was credible and had entered the marriage in good faith, but that Sholanke had not.

On June 3, 2015, USCIS issued a Notice of Intent to Deny (NOID). In response, the couple submitted an affidavit from Yoder which attempted to clarify some of the inconsistencies in their interview testimony. Yoder stated that she and Sholanke had lived together from the date of their marriage; she had stayed at her parents' house two days per week for work but had put in a request to transfer closer to Sholanke's apartment. Some of the family resistance, she claimed, was because she and Sholanke had not been married in a church, and they planned to do so. Yoder

also explained the misunderstandings over the number of brothers Sholanke had met and the undergarment, which was old, and she had forgotten about. Sholanke also submitted an affidavit, affirming Yoder's clarifications.

The couple submitted additional documentation in response to the NOID, including their 2014 joint tax return, a signed lease extension, a letter documenting Yoder's post-NOID request for a work transfer, bank statements, and photos. Yoder moved out of Sholanke's apartment on July 15, 2015. On July 23, 2015, USCIS denied both applications, finding that the additional documentation was insufficient to change its preliminary determination that the marriage was not bona fide. Yoder did not appeal. On September 9, 2015, Sholanke filed for divorce from Yoder in Cuyahoga County Court of Common Pleas, which was finalized on November 2, 2015. In the divorce decree, the court stated that the couple "had a bona fide marriage and marital relationship." Yoder was deposed during the divorce proceedings and, contrary to what she had stated in her affidavit, she said that she moved in to Sholanke's apartment in June 2015. On October 22, 2015, USCIS issued a Notice to Appear to Sholanke and placed him in removal proceedings.

Sholanke married Weems Sholanke on February 20, 2016. The couple filed an I-130 on March 7, 2016. They submitted much more substantial documentation than provided for Sholanke's marriage to Yoder. USCIS interviewed the couple separately on August 23, 2016.

USCIS issued a NOID on December 20, 2016, and the couple submitted additional documentation, primarily a brief from their attorney, on January 19, 2017. USCIS ultimately denied the application on April 12, 2017, on the basis that Sholanke had tried to evade immigration law by entering a sham marriage with Yoder and was therefore barred from any future immigration benefits under INA 204(c), 8 U.S.C. § 1154(c), regardless of whether his marriage to Weems Sholanke was bona fide. USCIS explained that while the Cuyahoga County Court had

characterized the couple as having a bona fide marital relationship, it was not clear what evidence was presented to the court and whether the court had reviewed the conflicting testimony and inconsistencies before USCIS. USCIS also concluded that the other inconsistencies in the record had not been adequately addressed. The couple appealed, but the BIA affirmed, finding that there was "substantial and probative" evidence in the record that Sholanke's marriage to Yoder was fraudulent.

Sholanke and Weems Sholanke then filed in federal court, seeking mandamus and declaratory relief that the BIA's decision violated the APA, 5 U.S.C. §§ 701–06. USCIS moved for judgment as a matter of law, and the Sholankes filed a combined opposition and counter-motion for summary judgment. The district court granted USCIS's motion and denied the counter-motion for summary judgment, holding that the Sholankes had not demonstrated that the BIA's decision was arbitrary and capricious. The district court rejected the Sholankes' argument that the Ohio court's determination that the marriage and marital relationship were valid was binding on USCIS. The court found that the record contained conflicting evidence and, taken in totality, contained substantial and probative evidence that Sholanke's marriage to Yoder was entered into to obtain an immigration benefit. This appeal followed.

## II.    ANALYSIS

### A.    Standard of Review

We review the grant of judgment as a matter of law de novo. *Mys v. Mich. Dep't of State Police*, 886 F.3d 591, 599 (6th Cir. 2018). Reviewing courts are required to evaluate the agency action under a "deferential standard" and "may not set aside or hold unlawful an agency action unless that action is arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." *Bangura v. Hansen*, 434 F.3d 487, 502 (6th Cir. 2006) (citing 5 U.S.C. § 706(2)(A)).

"An agency decision is arbitrary and capricious if the agency fails to examine relevant evidence or articulate a satisfactory explanation for the decision." *Id.* (citing *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42–43 (1983)). But "[e]ven when an agency explains its decision with 'less than ideal clarity,' a reviewing court will not upset the decision on that account 'if the agency's path may reasonably be discerned.'" *Alaska Dep't of Env't Conservation v. EPA*, 540 U.S. 461, 497 (2004) (quoting *Bowman Transp., Inc. v. Arkansas-Best Freight Sys, Inc.*, 419 U.S. 281, 286 (1974)).

## B. Discussion

A United States citizen spouse may apply on behalf of a non-citizen spouse for permission to adjust their status using Form I-130. *See* 8 U.S.C. § 1154(a)(1)(A)(i). However, 8 U.S.C. § 1154(c) states:

> [N]o petition shall be approved if (1) the alien has previously been accorded, or has sought to be accorded, an immediate relative or preference status as the spouse of a citizen of the United States or the spouse of an alien lawfully admitted for permanent residence, by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws, or (2) the Attorney General has determined that the alien has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws.

When evaluating whether a marriage is fraudulent, i.e., having been entered into for the purpose of evading the immigration laws, "[t]he 'central question' in determining whether a sham marriage exists is whether the parties 'intended to establish a life together at the time they were married.'" *Matter of Singh*, 27 I&N Dec. 598, 601 (B.I.A. 2019) (quoting *Matter of Laureano*, 19 I&N Dec. 1, 2–3 (B.I.A. 1983)). The agency applies the "substantial and probative" evidence standard. *Id.* at 602. A reasonable inference of fraud is not sufficient to meet this standard, and the standard is "higher than a preponderance of the evidence and closer to clear and convincing evidence." *Id.* at 607. It must be "more than probably true that the marriage is fraudulent." *Id.*

Direct evidence of fraud is not required. *Id.* at 608. The USCIS officer examining whether the § 1154(c) bar applies ordinarily "should not give conclusive effect to determinations made in a prior proceeding" regarding whether the individual had entered or attempted to enter into a marriage for the purpose of evading immigration law, "but, rather, should reach his own independent conclusion based on the evidence before him." *Matter of Tawfik*, 20 I&N Dec. 166, 168 (B.I.A. 1990).

Where "there is evidence in the record to indicate that the beneficiary has been [involved] in a marriage fraud conspiracy, . . . USCIS must advise the petitioner of any derogatory evidence." *Matter of Singh*, 27 I&N Dec. at 605 (quoting *Matter of Kahy*, 19 I&N Dec. 803, 806–07 (B.I.A. 1988)) (alteration in *Singh*). The burden then shifts to the petitioner "to establish that the beneficiary did not seek . . . status based on a prior fraudulent marriage" by submitting additional evidence showing there was not substantial and probative evidence in the record of marriage fraud. *Id.* The petitioner must do so by a preponderance of the evidence. *Id.* "Minor inconsistencies" and "limited" documentary evidence should be considered when assessing whether the marriage is fraudulent, but without more, these factors are likely insufficient to constitute substantial and probative evidence. *Id.* at 609. On the other hand, evidence of deliberate deception regarding cohabitation "strongly indicate[s] fraud." *Id.*

The Sholankes argue that the evidence in the administrative record does not amount to "substantial and probative" evidence that the marriage between Sholanke and Yoder was fraudulent. They argue that the type of documentation they produced—including bank statements, tax forms, insurance policies, photographs, and statements from friends and family—are all probative of a bona fide marital relationship. The Sholankes contend that the Ohio court's finding that the marital relationship between Sholanke and Yoder was bona fide was, even if not

dispositive, weighty evidence that should have prevented USCIS from concluding the marriage was fraudulent. And they argue that the BIA and the district court failed to credit Yoder and Sholanke's corrective affidavits.

USCIS counters that it was not acting arbitrarily and capriciously when it determined that the evidence in the record was substantial and probative that the marriage was not bona fide. It argues that the discrepancies between Yoder and Sholanke's statements to investigators, as well as the unsigned lease and the fact that investigators determined Yoder did not really reside with Sholanke, reasonably outweighed the evidence provided by the couple. USCIS also characterizes its decision not to credit the corrective affidavits over the evidence in the record as reasonable and contends that the Sholankes are asking the panel to re-weigh the evidence by giving more weight to the Ohio court's decree.

The record contains some evidence of deception on the part of Yoder and Sholanke. Yoder submitted an affidavit that stated that she and Sholanke had lived together as husband and wife from the time of their wedding in 2014. However, when deposed under oath during their divorce proceedings, Yoder stated that she moved into Sholanke's apartment in June 2015. The couple submitted an unsigned lease from 2014 as evidence of cohabitation, but it appears that Yoder may not actually have been on the lease until the renewal in 2015. Yoder and Sholanke also did not know basic information about each other and each other's families at their interviews. Because deception is strongly suggestive of fraud, USCIS is on firm ground.

Weems Sholanke had the opportunity to rebut USCIS's derogatory evidence concerning Sholanke's earlier marriage to Yoder by a preponderance of the evidence. In response to the NOID, Weems Sholanke submitted a brief from her attorney. The brief itself emphasized the Ohio court's finding and summarized the evidence already in the record. It did not, however, provide

any *new evidence* about the marriage in response to the NOID. USCIS did not act arbitrarily and capriciously when it determined that Weems Sholanke had failed to rebut the evidence of fraud in the record by a preponderance of the evidence.

The Sholankes essentially argue that USCIS, the BIA, and the district court should have afforded greater weight to both the Ohio court's finding that Sholanke and Yoder had a "bona fide marital relationship" and to the supplemental affidavits they submitted attempting to clarify previous conflicting testimony after the first NOID. As to the Ohio court's finding, "[i]t is well established that a State court's recognition of a marriage as valid under State law does not conclusively mean that immigration benefits will be conferred based on that marriage." *Matter of Huang*, 26 I&N Dec. 627, 633 (B.I.A. 2015). While the Ohio court's determination that Sholanke and Yoder had a bona fide marital relationship is certainly evidence, it is not dispositive evidence, as "immigration and naturalization law 'exists independent of state family law.'" *Id.* at 633 (quoting *Bustamante-Barrera v. Gonzales*, 447 F.3d 388, 399–400 (5th Cir. 2006)). Similarly, the supplemental affidavits submitted in response to the first NOID are evidence, but the agency is permitted to weigh the evidence, and USCIS determined the affidavits were not sufficient to overcome the other evidence in the record that indicated that Sholanke and Yoder were not cohabitating.

Both USCIS and the BIA reviewed the evidence and provided extensive reasoning for their decisions. The decisions of the agencies are not arbitrary and capricious under the applicable deferential standard.

## III.   CONCLUSION

Because USCIS did not act in an arbitrary and capricious manner when determining there was substantial and probative evidence that the marriage between Yoder and Sholanke was fraudulent, the district court is **AFFIRMED**.